Charles MANNA, Plaintiff,

v.

GREENBURGH # 11 SCHOOL DISTRICT, Esther Ridder, President, Board of Education, Greenburgh # 11 School District and Sandra Mallah, Superintendent of Schools, Defendants.

No. 92 Civ. 3351(WCC).

United States District Court, S.D. New York.

April 9, 1998.

Law Offices of Michael H. Sussman, Goshen, NY, for Plaintiff; Stephen Bergstein, of counsel.

Ehrlich, Frazer & Feldman, Garden City, NY, for Defendants, Greenburgh # 11 Union Free School District, Esther Ridder and Sandra Mallah; Jacob S. Feldman, James H. Pyun, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This action constitutes one of several legal proceedings arising from a relationship of animosity between plaintiff Charles Manna (and his union) and the defendants. The Amended Complaint alleges acts of prior restraint and retaliation in violation of plaintiff's free speech and associational rights under the federal and state constitutions. Defendants now move to dismiss the Amended Complaint on the ground that this Court should abstain in light of the several related proceedings.[1] For the reasons discussed below, this case will be placed on the Court's suspense docket.

## BACKGROUND

### I. Parties and Procedural History

Plaintiff Charles Manna is a teacher employed by defendant Greenburgh No. 11 School District (the "District"). He was one of the lead organizers and former chairman of the Ad Hoc Committee, a group of teachers who purportedly advocate on behalf of children attending the District's schools. He is also a member of the Greenburgh No. 11 Federation of Teachers (the "Union"), a collective bargaining agent representing teachers employed by the District.

The District was specially created by the State of New York to operate schools for emotionally disturbed children who reside at Children's Village, a private, not-for-profit therapeutic residential care facility in Dobbs Ferry. Defendant Esther Ridder is the president of the District's Board of Education (the "School Board") and vice-president of the Board of Directors of Children's Village. The School Board is selected by the Board of Directors of Children's Village. Defendant Sandra Mallah is the District's Superintendent of Schools.

The original Complaint in this action was filed in May 1992 by Manna and then-plaintiff Ad Hoc Committee. The Complaint sought injunctive, declaratory, and compensatory relief against the District and Ridder based on a policy adopted by the District that limited the distribution of literature on school premises. On May 31, 1995, shortly after being transferred to this Judge, the action was placed on the suspense docket due to the pendency of a related state court action. That state action is still awaiting trial.

On December 29, 1997, plaintiff filed the Amended Complaint, which withdrew the Ad Hoc Committee as a co-plaintiff and added Mallah as a defendant. The Amended complaint restated the charges in the original Complaint, and added new charges of unconstitutional retaliation. The retaliation claims stem from the District's preferral of disciplinary charges against plaintiff and other teachers in November 1994 and June 1997, and from the District's decision to reassign plaintiff to non-teaching duties and bar him from District premises and School Board meetings pending resolution of the disciplinary charges.

### II. Injunction Action

The instant case originally was stayed because of a state court action (the "Injunction Action") that paralleled the allegations in the original Complaint. The Injunction Action was commenced on October 20, 1993 by Children's Village, and amended to include the District as co-plaintiff. Among other things, these plaintiffs sought an injunction prohibiting the Union from distributing written material on Children's Village and District premises and preventing the Union from further involving the schoolchildren in any labor dispute. In response, the Union contended

---

1. Although the motion is styled as a Rule 12(b) motion to dismiss, the arguments of the defendants make clear that they are seeking abstention, whether in the form of dismissal or a stay.

that its activities were protected by the First Amendment.

On November 22, 1993, the state court issued a preliminary injunction prohibiting Union members from distributing written materials to anyone on Children's Village grounds or distributing such materials to any Children's Village student anywhere.[2] On March 10, 1994, the court issued a temporary restraining order enjoining the Union from picketing or distributing written material at a Children's Village dinner. Union members, however, violated the TRO and accordingly were held in criminal and civil contempt. The Appellate Division affirmed the contempt order, and on December 23, 1996 the Union filed a motion for leave to the Court of Appeals. That motion is pending.

On August 2, 1994, the Union removed the Injunction Action to federal court, but the case was immediately remanded to state court. On December 9, 1994, the state court issued a second preliminary injunction prohibiting the Union from displaying or distributing written material relating to the labor dispute on Children's Village premises. The court also permitted the filing of an amended complaint adding the District as co-plaintiff. In May 1995 the Union moved to dismiss the amended complaint. The motion was denied on September 20, 1995, and the Appellate Division affirmed the denial on October 7, 1996. The Union answered the amended complaint on October 10, 1995, asserting the First Amendment as an affirmative defense.

Around that time, a discovery dispute arose after the Union claimed a "union privilege" during depositions of its members. The state court granted in part the motion of the District and Children's Village to compel responses. On consent, the action was stayed pending appeal of the discovery issues. On October 7, 1996, the Appellate Division affirmed the state court's order compelling responses to certain questions. The Union moved for leave to appeal to the Court of Appeals on December 23, 1996; this motion is pending.

### III. *Disciplinary and Related State Proceedings*

In the instant action, the newly added allegations in the Amended Complaint revolve primarily around the initiation of disciplinary proceedings against plaintiff and other Union members. On November 11, 1994 and June 23, 1997, the District preferred disciplinary charges against plaintiff pursuant to New York State Education Law § 3020–a. In general, when charges are filed against a tenured teacher, the school district or school board must determine whether probable cause exists to bring a disciplinary proceeding.. See N.Y.Educ.Law § 3020–a(2)(a). The teacher may be suspended pending resolution of the disciplinary proceeding. See. *id.* § 3020–a(2)(b). If the teacher requests a hearing on the charges, a hearing officer or arbitrator determines whether the teacher should be disciplined. *See id.* § 2030–a(2), (3).

### A. *November 1994 Disciplinary Charges*

The November 1994 disciplinary charges arose from an incident on June 24, 1994 in which Union members disrupted a meeting conducted by Superintendent Mallah. The meeting dealt with the distribution by an emotionally disturbed child of a Union petition challenging prior disciplinary actions taken by the School Board against other Union members and calling for Mallah's firing. During the meeting, plaintiff and other Union members banged on the doors and windows of the meeting room and shouted at the meeting participants. Eventually, the protesters were dispersed by the police.

On November 11, 1994, the School Board determined that probable cause existed to commence disciplinary proceedings against the protesters, including plaintiff. Pending resolution of the charges, the School Board administratively reassigned plaintiff and the other teachers to curriculum development and barred them from entering Children's Village grounds.

Plaintiff and the Union challenged the propriety of the November 1994 charges in a

---

**2.** This preliminary injunction did not apply to school premises because the District was not a party to the original complaint in the Injunction Action.

proceeding before the New York State Public Employment Relations Board (the "PERB") and in an Article 78 proceeding in state court. In an Improper Practice Charge filed with the PERB on February 18, 1995, the Union claimed that the District interfered with the rights of Union members (including plaintiff) by, *inter alia*, instituting charges under Education Law § 3020–a and, while those charges were pending, reassigning Union members (including plaintiff) to off-site libraries for curriculum development work. It appears that on December 19, 1996, the administrative law judge annulled the November 1994 disciplinary charges. The District's appeal of this determination is pending in state court.

One week after filing the PERB charge, plaintiff and the Union also commenced an Article 78 proceeding in state court. In their complaint, plaintiff and the Union asked the state court to, *inter alia:* (1) declare that the defendants (the School Board, its members, and Superintendent Mallah) had violated the New York State Open Meetings Law by prohibiting Union members from attending School Board meetings; (2) enjoin the District from further violations of that law; and (3) annul all actions taken at the Board's November 11, 1994 meeting, including the preferral of disciplinary charges against plaintiff and other teachers. On July 31, 1996, the state court annulled the actions taken by the School Board at its November 11, 1994 meeting. This ruling was affirmed by the Appellate Division on December 1, 1997.

On December 9, 1996, while that appeal was pending, the School Board again preferred the same disciplinary charges after purportedly curing the defects on which the nullification of its original decision was based. Plaintiff and the Union challenged the decision to reinstate the November 1994 disciplinary charges by filing another PERB charge and commencing another state court action. In the PERB Improper Practice Charge, filed on March 6, 1997, the Union again claimed that the District improperly instituted charges under Education Law § 3020–a and reassigned plaintiff to off-site libraries for curriculum development work.

This PERB proceeding is currently pending. Plaintiff and the Union also commenced another Article 78 proceeding seeking to annul the District's decision to reinstate the November 1994 charges against plaintiff. The District's motion to dismiss that proceeding also is pending.

### B. *June 23, 1997 Disciplinary Charges*

The June 1997 disciplinary charges arose from the aforementioned reassignment of several teachers, including plaintiff, to non-teaching duties pending resolution of the November 1994 charges. Defendants contend that

> [d]uring the period of time that plaintiff and the other charged teachers were assigned to such duties, it was observed on a number of occasions that those individuals failed to report to their assigned workstations in a timely manner, left work before the end of the workday, were absent from their workstations without authorization, failed to notify or obtain authorization from the administration for such lateness-es, early departures, or absences, took excessive personal and/or sick days, and failed to timely submit their required work product.

(Affidavit of Jacob Feldman, dated Feb. 2, 1998, ¶ 89.) Plaintiff asserts that these charges were a pretext for unconstitutional retaliation against plaintiff.

On June 23, 1997, the School Board determined that probable cause existed to commence § 3020–a disciplinary proceedings against plaintiff and the other teachers. Yet again, plaintiff and the Union attacked this determination with both barrels, filing both a PERB charge and an Article 78 proceeding. This PERB Improper Practice Charge, filed on October 10, 1997, alleged that the District violated the teachers' rights by its "continuation of a persistent pattern of interference, restraint, coercion, reprisal, and discrimination [against Union] members for their protected activity," and by its "impermissible use of assignments and transfers." (Oct. 10, 1997 PERB Charge ¶ 27, attached as Exh. AA to Am.Compl.) Plaintiff and the Union also sought to annul the preferral of the June 1997 charges in an Article 78 proceeding.

Apparently, both of these proceeding are pending.

## IV. Related Federal Action

On April 26, 1995—shortly before the instant action was originally stayed—the Union, plaintiff, and several other Union members filed a separate action in the Southern District of New York (before Judge Jed Rakoff) against the School Board, Ridder, Mallah, and other defendants. *See Greenburgh No. 11 Federation of Teachers, et al. v. Board of Educ. of Greenburgh No. 11 Sch. Dist., et al.*, No. 95–2938. Among other things, that action sought declaratory, injunctive, and compensatory relief for alleged First Amendment violations. The conduct at issue in that action involved, *inter alia:* (1) the restrictions on literature distribution that underlie the Injunction Action, and (2) the June 24, 1994 protest, the ensuing November 11, 1994 disciplinary charges, and the attendant suspensions and prohibitions. Among other things, plaintiffs in that action alleged that the defendants' conduct was in retaliation for their exercise of their First Amendment rights.

On September 26, 1996, Judge Rakoff stayed the action pending final adjudication of the several related state actions (both civil and administrative). His decision rested mainly on the abstention doctrine set out in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny. The Second Circuit Court of Appeals affirmed the stay on June 10, 1997.

## DISCUSSION

■ "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction over actions properly before them. *Id.* at 817. Although strict, this duty is not absolute. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996). The Supreme Court has held that, in certain circumstances, federal courts possess authority to decline to assert their jurisdiction on the basis of "[w]ise judicial adminis-

tration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*, 424 U.S. at 817); *accord Quackenbush*, 116 S.Ct. at 1720–21.

■ In *Colorado River*, the Supreme Court held that in "exceptional" circumstances, a federal court may abstain from decision in an action based on the existence of a parallel state action. *See* 424 U.S. at 817–19. Six factors should be considered in determining whether exceptional circumstances justify abstention under the *Colorado River* doctrine: (1) whether abstention will avoid piecemeal litigation; (2) whether the federal action is more or less advanced than the state action(s); (3) whether the plaintiff's federal rights will be protected in the state proceedings; (4) whether federal or state law provides the rule of decision; (5) whether one forum is more convenient than the other; and (6) whether the controversy involves property over which one of the courts has assumed jurisdiction. *See Cone*, 460 U.S. at 15–16; *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989).

The Supreme Court has emphasized that the exceptional circumstances test is not subject to precise rules, but rather should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Cone*, 460 U.S. at 21. As the *Cone* Court explained, the abstention determination "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending upon the particular setting of the case." *Id.* at 16; *accord Colorado River*, 424 U.S. at 818–19.

■ It must be noted, however, that this action involves not only claims for injunctive and compensatory relief, but also a claim for declaratory relief pursuant to the Declarato-

ry Judgment Act, 28 U.S.C. §§ 2201–02.[3] In *Wilton v. Seven Falls Co.*, the Supreme Court held that a "discretionary standard," rather than the *Colorado River* exceptional circumstances test, governs a federal court's decision to stay or dismiss a declaratory judgment action during the pendency of parallel state court proceedings. *See* 515 U.S. 277, 282–88, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The more liberal standard for declaratory judgments is based on the recognition that "the Declaratory Judgment Act ... confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* 515 U.S. at 286. Accordingly, federal courts have broad "discretion in determining whether and when to entertain" a declaratory judgment claim. *Id.* at 282.

■ Where state proceedings parallel a declaratory judgment claim, the basic question for the district court is whether the issues in the federal action "can better be settled in the proceeding pending in the state court." *Wilton*, 515 U.S. at 282 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). In making this determination, the primary factors are " 'the scope of the pending state court proceeding and the nature of defenses open there.' ... This inquiry, in turn, entails consideration of 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.' " *Id.* (quoting *Brillhart*, 316 U.S. at 495).

The Court now turns to the question of whether the instant action should be stayed or dismissed in light of pending state proceedings, applying the *Wilton* standard to the declaratory judgment claim and the *Colorado River* standard to the other claims.

### A. Claim for Declaratory Relief

■ The Amended Complaint requests a declaration that the School Board's policy limiting the Union's right to distribute written materials on school grounds is unconsti-

tutional. This same relief was requested in plaintiff's original complaint, which this Court stayed in light of the state court Injunction Action. The Court sees no reason why abstention is any less appropriate now.

To begin with, although it is unclear whether the specific policy at issue in the instant action is also at issue in the pending Injunction Action, both involve the question of the District's authority to limit the First Amendment rights of Union members, including plaintiff. In particular, both actions concern the relative weights of the District's interest in protecting its emotionally fragile children and the rights of Union members to confront the District on labor issues. Moreover, the interests of all parties to the instant action are represented in the Injunction Action and can be adequately adjudicated in state court. In addition, the free speech restrictions underlying both the instant action and the Injunction Action are also at issue in the parallel federal suit, which has been stayed pending resolution of state court proceedings.

Accordingly, the Court exercises its discretion to withhold a declaratory judgment regarding the District's policy, at least until final adjudication of the Injunction Action and any other relevant proceedings.

### B. Claims for Injunctive and Compensatory Relief

■ Before proceeding to the *Colorado River* "exceptional circumstances" factors, it must be determined whether the instant action and the pending state proceedings are in fact duplicative. "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the ... proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *National Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir.1997) (citing *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir.1985); *Arkwright–Boston*

---

3. The Declaratory Judgment Act provides, in relevant part, that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

*Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 211 (2d Cir.1985)).

■ The instant action and the numerous state proceedings are indeed parallel. In the first place, the issues in the instant action and the pending PERB and Article 78 proceedings are essentially the same: the propriety and constitutionality of the November 1994 and June 1997 disciplinary charges and the defendants' attendant conduct, such as reassigning plaintiff to non-teaching duties and barring him from School Board meetings. Additionally, the plaintiff (and/or the Union) [4] and the District are involved in all of these state court proceedings.

■ The only significant question is whether the desired relief is sufficiently similar for abstention purposes. In particular, the question is whether abstention is precluded because only the instant action seeks compensatory relief. Indeed, compensatory damages were not even available to plaintiff in the state court proceedings. *See Davidson v. Capuano,* 792 F.2d 275, 278–80 (2d Cir.1986) (damages for civil rights violations are not available in Article 78 proceedings);

accord *Antonsen v. Ward,* 943 F.2d 198, 203 (2d Cir.1991); *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 29–30 (2d Cir.1986). However, the unavailability in state court of a particular remedy does not automatically destroy the parallel nature of the state and federal proceedings for abstention purposes. This is especially the case where, as here, the district court chooses to stay the federal action rather than dismissing it outright, and the relief that is unavailable in the state proceedings will not necessarily be subject, upon completion of those proceedings, to a res judicata bar in federal court.[5] In these particular circumstances, the close identity of issues and parties is the dispositive factor. Indeed, in the related federal case, the fact that plaintiff sought compensatory damages under § 1983 did not prevent Judge Rakoff and the Second Circuit from deeming the state proceedings to be "parallel" and approving a stay.

■ Having determined that the pending state proceedings parallel the instant action, the Court is convinced that exceptional circumstances justify abstention.

---

4. Technically, the charging party in the relevant PERB proceedings is the Union, not the plaintiff individually. In arguing that the state administrative proceedings are not parallel to the instant action, plaintiff attempts to distance himself from the Union by pointing out that "[s]imilarity of parties is not the same as identity of parties." *Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 603 (2d Cir.1988). This attempt is unavailing. In *Cuomo,* the plaintiff in the state cases was the New York Medical Malpractice Insurance Association (the "MMIA"); the plaintiffs in the federal action included individual insurance companies which were members of the MMIA. The Court noted that the federal plaintiffs' membership in the state plaintiff association did not necessarily constitute "identity of parties." Here, however, the Union commenced the PERB proceedings on behalf of plaintiff in order, *inter alia,* to annul the disciplinary charges against him. Indeed, the Union was expressly acting as plaintiff's legal representative. This degree of identity is sufficient for purposes of *Colorado River* abstention. *See Canaday v. Koch,* 608 F.Supp. 1460, 1475 (S.D.N.Y. 1985) ("Where the interests of the plaintiffs in each of the suits are congruent, *Colorado River* abstention may be appropriate notwithstanding the nonidentity of the parties"), *aff'd,* 768 F.2d 501 (2d Cir.1985) (per curiam); accord *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 695 (7th Cir.1985) ("If the rule were otherwise [than that stated in *Canaday* ], the *Colorado River* doctrine could be entirely avoided by the simple

expedient of naming additional parties."); *Greenburgh No. 11,* No. 95–2938 (S.D.N.Y. Sept. 26, 1996) (Rakoff, J.) ("exact identity of parties is not required for purposes of the Colorado River doctrine, when the interests of the parties in each case are 'congruent' ") (citing *Canaday,* 608 F.Supp. at 1475), *aff'd,* 768 F.2d 501, (2d Cir. 1997).

5. Under general principles of res judicata (or claim preclusion), once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if they seek a different remedy. *See Fay,* 802 F.2d at 28; *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 1159 (1981). However, "res judicata does not bar a claim based on the same cause of action ... if the forum that rendered the prior judgment 'did not have the power to award the full measure of relief sought' in a subsequent action." *Fay,* 802 F.2d at 29 (quoting *Davidson,* 792 F.2d at 278). As noted above, damages for civil rights violations are not available in Article 78 proceedings. Therefore, staying the instant action until the conclusion of the related state proceedings would not prevent plaintiff from obtaining compensatory damages (assuming, of course, that plaintiff were victorious in those proceedings).

First, abstention certainly would help alleviate the already existing problem of piecemeal litigation. Second, the state proceedings are significantly more advanced than the instant action. Here, the original Complaint advanced little beyond the defendants' answer before being stayed. With respect to the Amended Complaint, no action has been taken other than the filing of the instant motion. By contrast, the myriad state proceedings have progressed substantially further; some have even advanced to the appellate stage. Third, plaintiff's federal rights will be adequately protected in the state proceedings. To begin with, the PERB is competent to consider issues of free speech. *See, e.g., In re Kings Park Classroom Teachers' Ass'n,* 27 PERB ¶ 3022 (1994). Decisions of the PERB themselves are subject to state court review in Article 78 proceedings. *See In re Board of Educ. v. New York State Pub. Employment Relations Bd.,* 75 N.Y.2d 660, 555 N.Y.S.2d 659, 662, 554 N.E.2d 1247, 1250 (1990) (PERB decisions may be reviewed in Article 78 proceeding for "breach of constitutional rights"). In addition, review of PERB proceedings aside, the other Article 78 proceedings brought by plaintiff challenging the defendants' conduct may properly resolve constitutional questions. Finally, in the related federal action, Judge Rakoff and the Second Circuit acknowledged that the state proceedings provided adequate remedies for plaintiff's constitutional claims. Therefore, the first three *Colorado River/Cone* factors strongly suggest the propriety and wisdom of staying the instant action.

With respect to the fourth factor, plaintiff's claims in the instant action are based on both federal and state law. To the extent that this case involves issues of federal law, this consideration weighs against abstention. *See Cone,* 460 U.S. at 25–26. However, because the state courts possess concurrent jurisdiction over the federal constitutional claims, the source-of-law factor has less significance than it would if this Court had exclusive jurisdiction over the federal claims. *See id.* 460 U.S. at 25. With respect to the fifth factor, the state and federal fora are of roughly equal convenience. The sixth and final factor is not applicable in this case, as no res is involved. The Court acknowledges that although these latter three factors are less relevant in the particular circumstances of this case, even their relative insignificance militates against abstention in light of the presumption of federal jurisdiction. *See id.* at 25–26; *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327–28 (2d Cir.1986).

Nevertheless, the weight of the first three factors—the existence of several pending parallel state proceedings, the advanced state of those proceedings, and the adequate protections available in those proceedings—reflect the "exceptional circumstances" of this case and clearly warrant abstention. The case will be stayed pending resolution of the related state proceedings.

Finally, although the defendants have not moved to dismiss on the basis of the related federal case, the Court notes the substantial, albeit not complete, overlap of issues between that case and this one. Once the parallel state proceedings have concluded, the federal actions apparently should be consolidated.

## CONCLUSION

For the reasons discussed above, the defendants' motion is granted to the extent that is seeks to stay this action. To the extent that it seeks dismissal, the motion is denied. The Clerk is directed to place this case on the suspense docket.

SO ORDERED.