**Eugene W. LEVICH, Plaintiff,**

v.

**THE LIBERTY CENTRAL SCHOOL DISTRICT, Dr. Brian Howard, Edward Rhine, Robert L. Chakar, Jr., Dr. Phillip Olsen, Willis Olivio, Matthew Frumess, Armand Seibert, Frank De-Mayo, Chris Murphy, Charles Barbuti, Joyce Burnett and Robert DeStefano Defendants.**

No. 02 CIV. 8929(WCC).

United States District Court,
S.D. New York.

April 23, 2003.

Robert N. Isseks, Middleton, NY, for plaintiff.

Servino Santangelo & Randazzo, LLP, White Plains, NY (James A. Randazzo, of Counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Eugene Levich brings the instant action against defendants Liberty Central School District (the "School District"), Dr. Brian F. Howard ("Dr.Howard"), Edward Rhine, Robert L. Chakar, Jr. ("Principal Chakar"), Dr. Philip Olsen, Willis Olivo, Matthew Frumess, Armand Seibert, Frank DeMayo, Chris Murphy, Charles Barbuti, Joyce Burnett and Robert DeStefano under 42 U.S.C. § 1983 alleging a deprivation of rights, privileges and immunities secured by the First and Fourteenth Amendments of the United States Constitution. Plaintiff now moves for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) enjoining defendants from continuing their pending disciplinary proceeding against plaintiff under New York State Education Law § 3020–a until a hearing and determination of the merits of this action. For the reasons that follow, plaintiff's motion for a preliminary injunction is denied.

## BACKGROUND

Plaintiff has been employed with the School District as a Social Studies teacher since September, 1973. (Complt.¶ 10.) Throughout his entire tenure in the School District, until September, 2002, plaintiff never taught a class in 11th grade American History. Plaintiff's experience and ex-pertise is in World or Global History and Geography. These are also the subject areas in which plaintiff received his two Masters degrees and his PhD (Asian Studies). (*Id.* at ¶ 12.)

In October, 2001, plaintiff created and chaired a committee of the Liberty Faculty Association for the purpose of assessing the competence of the School District's administrators. (*Id.* at ¶ 14.) This assessment involved use of a questionnaire to be answered by the teachers in the School District. Based upon the assessment survey, the committee expressed the view that the School District administration is incompetent. (*Id.* at ¶ 15.) In the Spring of 2002, plaintiff appeared before the School District's Board of Education at two of its public meetings and spoke critically of the School District's administration. In May, 2002, the School District and/or Principal Chakar changed plaintiff's teaching assignments from 9th and 10th grade Global History, classes which plaintiff had been teaching in the School District for decades, to only one Global History class and four sections of 8th grade and one section of 11th grade American History, a subject which plaintiff had never taught before. (*Id.* at ¶ 17.) Plaintiff argues that the above changes were made without any legitimate educational purpose, were contrary to the educational interests of the School District's high school students, and were made in obvious retaliation for plaintiff's role in creating and chairing the faculty assessment committee and in speaking out publicly, criticizing the administration before the Board of Education. (Complt.¶ 22.)

Defendants respond by citing a letter from Principal Chakar to plaintiff in which he outlines the reasons for implementing the course changes. (Letter from Principal Chakar to Levich of 6/14/02 at 1.) There, Principal Chakar reminded plaintiff

that he is certified by the State of New York to teach social studies for grades 7–12. Additionally, the letter highlights plaintiff's student failure rate for the past several years. Specifically, during the 1998–99 school years, 31% of plaintiff's students in grade 10 failed plaintiff's Global History course and 40% of plaintiff's grade 9 class failed; in 2000–01, 31% of plaintiff's grade 10 class failed and in the third quarter of 2001–02, 34% of his grade 10 students were failing. (*Id.* at 2.) Principal Chakar also advised plaintiff that at the end of the 2001–02 school year, a number of teachers in the social studies department left, creating, among other things, a need to replace the eighth grade social studies teacher. According to Principal Chakar, after much discussion with the Director of Curriculum as well as the Director of Pupil Personnel it was determined that plaintiff would be one of the replacements, as he was certified by New York State to teach that class. (*Id.*) Additionally, just one business day before school opened for teachers, on August 29, 2002, a member of the high school Social Studies Department resigned, necessitating a further change in teaching assignments. As a result, an 11th grade American History class was added to plaintiff's teaching assignments. (*Id.*)

In response to these reassignments, on September 4, 2002, plaintiff sent to the parents of his 11th grade American History class a memo in which he disavowed any knowledge of American History and stated that he was a specialist in teaching 9th and 10th grade Global History. (Letter from Levich to the parents of Levich's 11th grade American History class of 9/4/02 at 1.) Plaintiff also stated that he did not know the reason for his recent reassignment from Global History to American History. Plaintiff concluded the letter by disclaiming any blame should any of his students fail his course or the Regents examination. In response to plaintiff's let-

ter, Dr. Howard, Superintendent of Schools, wrote plaintiff advising him that there were legitimate reasons for his reassignment—Dr. Howard reiterated those reasons set forth in Principal Chakar's June 14, 2002 letter to plaintiff. (Letter from Howard to Levich of 9/9/02 at 1–2.) In that letter, Dr. Howard also admonished plaintiff for his September 4th letter, stating that his actions were "unprofessional and unacceptable." Dr. Howard requested that plaintiff write a letter to the students and parents of his American History class no later than September 17, 2002, apologizing for plaintiff's September 4th letter and confirming his commitment to discharge his teaching responsibilities effectively. Dr. Howard warned plaintiff that his failure to do so could result in the School District pursuing disciplinary action, "up to and including termination, pursuant to Education Law § 3020–a." (*Id.* at 2.) Plaintiff failed to write any follow up letter. On October 16, 2002, the School District advised plaintiff that on October 15, 2002, the Board of Education had found probable cause to bring a disciplinary proceeding against plaintiff under Education Law § 3020–1 for his failure to write the letter of apology as requested by Dr. Howard. Plaintiff now brings this motion for a preliminary injunction seeking to enjoin defendants from continuing their pending disciplinary proceeding against plaintiff.

## DISCUSSION

### I. *Injunctive Relief*

██ "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'" *N.A.A.C.P., Inc. v. Town of East Haven,*

70 F.3d 219, 223 (2d Cir.1995). "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be granted." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir.1983). Defendants contend that, even if plaintiff could meet the requirements for injunctive relief, an injunction should not issue because *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny require this Court to abstain from exercising jurisdiction over this matter and to dismiss the action. We agree.

■ In this circuit, in order to invoke *Younger* abstention, the following three questions must be affirmatively resolved: "1) whether there is an ongoing state proceeding; 2) whether an important state interest is involved; and 3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.1987). Here, it is clear that there is an ongoing state proceeding. After plaintiff received the disciplinary charges, he elected under Education Law § 3020–a to request a hearing before an arbitrator. *See Rubin*, 190 F.Supp.2d at 543; *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) ("Absent any pending proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous.").

With respect to the second criterion, it is beyond dispute that there are vital state interests involved in this matter. "It has long been recognized that matters involving schools, and the discipline of students and teachers are principally matters of local concern, and that the state has vital interests in maintaining the proper and orderly functioning of its local schools." *Id; see also Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 628, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (finding abstention to be warranted where private school sought to enjoin ongoing state disciplinary proceedings against it). Generally, this is not a matter of federal involvement. Finally, it is clear that plaintiff will have an adequate opportunity to raise the federal claims advanced here in the pending state disciplinary proceeding. In reviewing plaintiff's papers, it is apparent that the claims brought in federal court, that is, retaliation, and other actions intending to quash or chill plaintiff's speech, are the same defenses that plaintiff will raise to defend the School District's charges in the state disciplinary proceeding that is now pending. *Rubin*, 190 F.Supp.2d at 544. Moreover, plaintiff does not dispute the fact that these constitutional claims and issues can also be raised in any state court proceeding that may be brought under Article 75 for review of the decision in that proceeding. *See Manna v. Greenburgh # 11 School Dist.*, 2 F.Supp.2d 461, 469 (S.D.N.Y.1998) (applying *Younger* abstention doctrine, and noting that teacher's "federal rights will be adequately protected in the state proceedings").

## II. Bad Faith Exception to Younger Abstention Doctrine

■ Plaintiff asks this Court to invoke the bad faith exception to the *Younger* abstention doctrine. To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive. *Schlagler v. Phillips*, 166 F.3d 439, 442–44 (2d Cir.1999). Thus, for example, courts have found that a refusal to abstain would be justified where a "proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a

prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir.1994). A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even where the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception. *See Schlagler*, 166 F.3d at 443–44. The record before this Court fails to demonstrate that when the School District brought disciplinary proceedings against plaintiff, "it was driven by a retaliatory motive or by some other nefarious purpose." *Diamond "D" Construction Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir.2002); *see also Cullen*, 18 F.3d at 104 (affirming the district court's injunction and holding that the district court's findings of a "past history of personal conflict" between Cullen and the school board, and the "strictly *ad hominem*" manner in which the school board had disciplined him were sufficient to establish that the school board disciplinary proceeding was retaliatory in nature and calculated to chill First Amendment expressive activity critical of the school board). To the contrary, the facts tend to negate any inference of bad faith on the part of the School District in assigning plaintiff to teach American History. For example, in a letter of protest from the tenured members of the Social Studies Department[1] it is clear that plaintiff was not the only focus of the administration's course reassignment policy. (*Id.* at 1–2.) The letter of protest states that Ms. Shawn Lopez was told that she would teach the Advanced Placement course in American History although she apparently never taught this course, and that the School District would pay to send her for the necessary and recommended training sessions. (*Id.* at 1.) Additionally, Mr. Ernest Feasel was told at the end of August, 2002 that he would be teaching two 11th grade American History classes although he too apparently had never taught the course before. Moreover, in three out of the last four years Mr. Feasel has been given a new subject to teach. Also stated in the letter of protest is the fact that Mr. Lance Fialkoff was hired to replace Mary Ann Mullen who left partly out of frustration with administration decisions and policies of the last few years. (*Id.*) Whether these administrative decisions were educationally sound is irrelevant. What is pertinent to the instant action is the fact that plaintiff was clearly not the only subject of the administration's decision to reassign Social Studies courses. Thus there is substantial evidence that plaintiff's reassignment from Global History to American History was made for reasons other than his role in creating and chairing the faculty assessment committee and in speaking out publicly, criticizing the administration before the Board of Education.

We also find possible justification for the principal and superintendent's decision to assign plaintiff to American History based on the pass/fail ratio of the students in his Global History courses. The high rate of failure in that course creates some doubt as to plaintiff's teaching proficiency.[2]

---

1. The letter of protest alleged that "... the Principals and Superintendent are arbitrarily making decisions regarding schedules and allowing other concerns to outweigh what is best for the students." (Letter from High School Social Studies Teachers to the Liberty Board of Education at 1.)

2. Plaintiff argues that, in general, his grades have been as high or higher than those of his colleagues and that the grade reports for all plaintiff's classes and for all other teachers should be subpoenaed for comparison. (Levich Aff. ¶ 11.) This argument merely establishes that there are issues of fact which contraindicate the preliminary injunctive relief sought by plaintiff.

Defendants maintain that their immediate reason for bringing a disciplinary proceeding against plaintiff was his failure to write a follow-up letter apologizing for his September 4, 2002 letter to the parents and students of plaintiff's 11th grade American History class as requested in Dr. Howard's September 9, 2002 memo to plaintiff. In that memo, Dr. Howard warned plaintiff that his failure to do so could result in the School District pursuing disciplinary action, "up to and including termination, pursuant to Education Law § 3020–a." (Letter from Howard to Levich of 9/9/02 at 3.) This threat of a disciplinary proceeding and the subsequent execution of that threat were understandable in view of the content of plaintiff's September 4 letter. In that letter plaintiff does not merely state that he has insufficient knowledge to teach American History and does not even know what the curriculum for this class includes and has never seen the textbook for the course. (Letter from Levich to the parents of Levich's 11th grade American History class of 9/4/02 at 1.) Much more disturbing was plaintiff's statement to the parents that. "If, however, your son or daughter fails the course or the Regents examination in American History, please do not blame me." (*Id.*)

Plaintiff thus seriously eroded the parents' faith in the school's ability to provide their children with a quality education which would prepare them to pass at the end of the semester the State Regents examinations which are required for graduation. The School District clearly has an interest in ensuring that its teachers do not use the parents of their students as a forum for their personal grievances about administrative decisions. Thus, Dr. Howard's request that plaintiff write a letter to the students and parents apologizing for his previous letter and confirming his commitment to discharge his teaching responsibilities effectively was reasonable, as was the threat of disciplinary proceedings if plaintiff failed to do so. Despite several extensions of time, plaintiff failed to write the letter of apology. Thus the Court cannot find that the disciplinary proceeding against plaintiff was brought for an improper purpose. Plaintiff has failed to demonstrate that the bad faith exception to the *Younger* abstention doctrine should be invoked in this case.

### III. *Irreparable Harm*

■ Even if we were to find an exception to the *Younger* abstention doctrine, the Court is not convinced that plaintiff will suffer irreparable harm which warrants injunctive relief. Although plaintiff alleges constitutional injury, which frequently constitutes irreparable harm, *See e.g. Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir.1996), *but see, United States v. Vazquez,* 145 F.3d 74, 82 (2d Cir.1998), plaintiff has not been suspended from his employment duties and continues to be employed by the School District, receiving full pay and benefits. Thus, plaintiff has suffered no financial loss. *See Rubin v. Corning–Painted Post,* 190 F.Supp.2d 541, 543 (W.D.N.Y.2002). Moreover, since the distribution of the September 4 letter, plaintiff has been switched from teaching American History back to Global History. (Complt.¶ 32.) Therefore, although plaintiff seeks damages in this federal lawsuit,[3] in light of plaintiff's present employment status and his continued receipt of his full salary, plaintiff has failed to establish the irreparable harm requisite for injunctive relief. *Id; see also Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995) ("The possibility that adequate compensatory or other corrective relief will be available at a later

---

**3.** In this action, plaintiff has made a federal civil rights claim against the same defendants, seeking monetary damages for the very conduct which plaintiff has sought to enjoin.

date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

## CONCLUSION

For the reasons stated above, plaintiff's motion for a preliminary injunction is denied.

**SO ORDERED.**