WILTON ET AL. *v.* SEVEN FALLS CO. ET AL.

No. 94–562.   Argued March 27, 1995—Decided June 12, 1995

O'CONNOR, J., delivered the opinion of the Court, in which all other Members joined, except BREYER, J., who took no part in the consideration or decision of the case.

*Michael A. Orlando* argued the cause for petitioners. With him on the briefs were *Patrick C. Appel* and *Paul LeRoy Crist.*

*Werner A. Powers* argued the cause for respondents. With him on the brief was *Charles C. Keeble, Jr.**

JUSTICE O'CONNOR delivered the opinion of the Court.

This case asks whether the discretionary standard set forth in *Brillhart* v. *Excess Ins. Co. of America,* 316 U. S. 491 (1942), or the "exceptional circumstances" test developed in *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800 (1976), and *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.,* 460 U. S. 1 (1983), governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings, and under what standard of review a court of appeals should evaluate the district court's decision to do so.

## I

In early 1992, a dispute between respondents (the Hill Group) and other parties over the ownership and operation of oil and gas properties in Winkler County, Texas, appeared likely to culminate in litigation. The Hill Group asked petitioners (London Underwriters)[1] to provide them with coverage under several commercial liability insurance policies. London Underwriters refused to defend or indemnify the Hill Group in a letter dated July 31, 1992. In September 1992, after a 3-week trial, a Winkler County jury entered a verdict in excess of $100 million against the Hill Group on various state law claims.

The Hill Group gave London Underwriters notice of the verdict in late November 1992. On December 9, 1992, Lon-

---

*Laura A. Foggan, Daniel E. Troy,* and *Thomas W. Brunner* filed a brief for the Insurance Environmental Litigation Association as *amicus curiae* urging reversal.

*Edward F. LeBreton III* filed a brief for the Maritime Law Association as *amicus curiae.*

[1] For the sake of clarity, we adopt the Court of Appeals' manner of referencing the parties.

don Underwriters filed suit in the United States District Court for the Southern District of Texas, basing jurisdiction upon diversity of citizenship under 28 U. S. C. § 1332. London Underwriters sought a declaration under the Declaratory Judgment Act, 28 U. S. C. § 2201(a) (1988 ed., Supp. V), that their policies did not cover the Hill Group's liability for the Winkler County judgment. After negotiations with the Hill Group's counsel, London Underwriters voluntarily dismissed the action on January 22, 1993. London Underwriters did so, however, upon the express condition that the Hill Group give London Underwriters two weeks' notice if they decided to bring suit on the policy.

On February 23, 1993, the Hill Group notified London Underwriters of their intention to file such a suit in Travis County, Texas. London Underwriters refiled their declaratory judgment action in the Southern District of Texas on February 24, 1993. As promised, the Hill Group initiated an action against London Underwriters on March 26, 1993, in state court in Travis County. The Hill Group's codefendants in the Winkler County litigation joined in this suit and asserted claims against certain Texas insurers, thus rendering the parties nondiverse and the suit nonremovable.

On the same day that the Hill Group filed their Travis County action, they moved to dismiss or, in the alternative, to stay London Underwriters' federal declaratory judgment action. After receiving submissions from the parties on the issue, the District Court entered a stay on June 30, 1993. The District Court observed that the state lawsuit pending in Travis County encompassed the same coverage issues raised in the declaratory judgment action and determined that a stay was warranted in order to avoid piecemeal litigation and to bar London Underwriters' attempts at forum shopping. London Underwriters filed a timely appeal. See *Moses H. Cone Memorial Hospital, supra,* at 10 (a district court's order staying federal proceedings in favor of pending

state litigation is a "final decisio[n]" appealable under 28 U. S. C. § 1291).

The United States Court of Appeals for the Fifth Circuit affirmed. 41 F. 3d 934 (1994). Noting that under Circuit precedent, "[a] district court has broad discretion to grant (or decline to grant) declaratory judgment," *id.*, at 935, citing *Torch, Inc.* v. *LeBlanc*, 947 F. 2d 193, 194 (CA5 1991), the Court of Appeals did not require application of the test articulated in *Colorado River, supra*, and *Moses H. Cone, supra*, under which district courts must point to "exceptional circumstances" to justify staying or dismissing federal proceedings. Citing the interests in avoiding duplicative proceedings and forum shopping, the Court of Appeals reviewed the District Court's decision for abuse of discretion, and found none. 41 F. 3d, at 935.

We granted certiorari, 513 U. S. 1013 (1994), to resolve Circuit conflicts concerning the standard governing a district court's decision to stay a declaratory judgment action in favor of parallel state litigation, compare, *e. g., Employers Ins. of Wausau* v. *Missouri Elec. Works*, 23 F. 3d 1372, 1374, n. 3 (CA8 1994) (pursuant to *Colorado River* and *Moses H. Cone*, a district court may not stay or dismiss a declaratory judgment action absent "exceptional circumstances"); *Lumbermens Mut. Casualty Co.* v. *Connecticut Bank & Trust*, 806 F. 2d 411, 413 (CA2 1986) (same), with *Travelers Ins. Co.* v. *Louisiana Farm Bureau Federation, Inc.*, 996 F. 2d 774, 778, n. 12 (CA5 1993) (the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone* is inapplicable in declaratory judgment actions); *Mitcheson* v. *Harris*, 955 F. 2d 235, 237–238 (CA4 1992) (same), and the applicable standard for an appellate court's review of a district court's decision to stay a declaratory judgment action, compare, *e. g., United States Fidelity & Guaranty Co.* v. *Murphy Oil USA, Inc.*, 21 F. 3d 259, 263, n. 5 (CA8 1994) (reviewing for abuse of discretion); *Christopher P.* v. *Marcus*, 915 F. 2d 794, 802 (CA2 1990) (same), with *Genentech, Inc.* v. *Eli Lilly & Co.*, 998

F. 2d 931, 936 (CA Fed. 1993) (reviewing *de novo*); *Cincinnati Ins. Co.* v. *Holbrook*, 867 F. 2d 1330, 1333 (CA11 1989) (same). We now affirm.

## II

Over 50 years ago, in *Brillhart* v. *Excess Ins. Co. of America*, 316 U. S. 491 (1942), this Court addressed circumstances virtually identical to those present in the case before us today. An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. The District Court dismissed the action in favor of pending state garnishment proceedings, to which the insurer had been added as a defendant. The Court of Appeals reversed, finding an abuse of discretion, and ordered the District Court to proceed to the merits. Reversing the Court of Appeals and remanding to the District Court, this Court held that, "[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction." *Id.*, at 494. The Court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.*, at 495. The question for a district court presented with a suit under the Declaratory Judgment Act, the Court found, is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Ibid.*

*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard.

The Court indicated, for example, that in deciding whether to enter a stay, a district court should examine "the scope of the pending state court proceeding and the nature of defenses open there." *Ibid.* This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Ibid.* Other cases, the Court noted, might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action at the outset. See *ibid.* But *Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," *ibid.*, if it permitted the federal declaratory action to proceed.

*Brillhart*, without more, clearly supports the District Court's decision in this case. (That the court here stayed, rather than dismissed, the action is of little moment in this regard, because the state court's decision will bind the parties under principles of res judicata.) Nonetheless, London Underwriters argue, and several Courts of Appeals have agreed, that intervening case law has supplanted *Brillhart*'s notions of broad discretion with a test under which district courts may stay or dismiss actions properly within their jurisdiction only in "exceptional circumstances." In London Underwriters' view, recent cases have established that a district court must point to a compelling reason—which, they say, is lacking here—in order to stay a declaratory judgment action in favor of pending state proceedings. To evaluate this argument, it is necessary to examine three cases handed down several decades after *Brillhart*.

In *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800 (1976), the Government brought an action in Federal District Court under 28 U. S. C. § 1345 seek-

ing a declaration of its water rights, the appointment of a water master, and an order enjoining all uses and diversions of water by other parties. See Pet. for Cert. in *Colorado River Water Conservation Dist.* v. *United States,* O. T. 1974, No. 74–940, pp. 39a–40a. The District Court dismissed the action in deference to ongoing state proceedings. The Court of Appeals reversed, 504 F. 2d 115 (CA10 1974), on the ground that the District Court had jurisdiction over the Government's suit and that abstention was inappropriate. This Court reversed again. Without discussing *Brillhart,* the Court began with the premise that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress. *Colorado River, supra,* at 813, 817–818, citing *Cohens* v. *Virginia,* 6 Wheat. 264, 404 (1821). The Court determined, however, that a district court could nonetheless abstain from the assumption of jurisdiction over a suit in "exceptional" circumstances, and it found such exceptional circumstances on the facts of the case. 424 U. S., at 818–820. Specifically, the Court deemed dispositive a clear federal policy against piecemeal adjudication of water rights; the existence of an elaborate state scheme for resolution of such claims; the absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss; the extensive nature of the suit; the 300-mile distance between the District Court and the situs of the water district at issue; and the prior participation of the Federal Government in related state proceedings.

Two years after *Colorado River* we decided *Will* v. *Calvert Fire Ins. Co.,* 437 U. S. 655 (1978), in which a plurality of the Court stated that, while "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,'" *id.,* at 662, quoting *McClellan* v. *Carland,* 217 U. S. 268, 282 (1910), a district court is "'under no compulsion to exercise that jurisdiction,'" 437 U. S., at 662, quoting *Brillhart,* 316

U. S., at 494. *Will* concerned an action seeking damages for an alleged violation of federal securities laws brought in federal court during the pendency of related state proceedings. Although the case arose outside the declaratory judgment context, the plurality invoked *Brillhart* as the appropriate authority. *Colorado River*, according to the plurality, "in no way undermine[d] the conclusion of *Brillhart* that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the district court's discretion." *Will, supra*, at 664. Justice Blackmun, concurring in the judgment, criticized the plurality for not recognizing that *Colorado River* had undercut the "sweeping language" of *Brillhart*. 437 U. S., at 667. Four Justices in dissent urged that the *Colorado River* "exceptional circumstances" test supplied the governing standard.

The plurality's suggestion in *Will* that *Brillhart* might have application beyond the context of declaratory judgments was rejected by the Court in *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1 (1983). In *Moses H. Cone*, the Court established that the *Colorado River* "exceptional circumstances" test, rather than the more permissive *Brillhart* analysis, governs a district court's decision to stay a suit to compel arbitration under § 4 of the Arbitration Act in favor of pending state litigation. Noting that the combination of Justice Blackmun and the four dissenting Justices in *Will* had made five to require application of *Colorado River*, the Court rejected the argument that *Will* had worked any substantive changes in the law. "'Abdication of the obligation to decide cases,'" the Court reasoned, "'can be justified . . . only in the exceptional circumstance where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" 460 U. S., at 14, quoting *Colorado River, supra*, at 813. As it had in *Colorado River*, the Court articulated nonexclusive factors relevant to the existence of such exceptional circumstances, including the assumption by either court of jurisdic-

tion over a res, the relative convenience of the fora, avoidance of piecemeal litigation, the order in which jurisdiction was obtained by the concurrent fora, whether and to what extent federal law provides the rules of decision on the merits, and the adequacy of state proceedings. Evaluating each of these factors, the Court concluded that the District Court's stay of federal proceedings was, under the circumstances, inappropriate.

Relying on these post-*Brillhart* developments, London Underwriters contend that the *Brillhart* regime, under which district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to "exceptional circumstances" to justify their actions), is an outmoded relic of another era. We disagree. Neither *Colorado River*, which upheld the dismissal of federal proceedings, nor *Moses H. Cone*, which did not, dealt with actions brought under the Declaratory Judgment Act, 28 U. S. C. § 2201(a) (1988 ed., Supp. V). Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone*. No subsequent case, in our view, has called into question the application of the *Brillhart* standard to the *Brillhart* facts.

Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U. S. C. § 2201(a) (1988 ed., Supp. V) (emphasis added). See generally E. Borchard, Declaratory Judgments 312–314 (2d ed. 1941); Borchard, Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments, 26 Minn. L. Rev. 677 (1942). The statute's textual commitment to discretion, and the breadth

of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. See generally Shapiro, Jurisdiction and Discretion, 60 N. Y. U. L. Rev. 543 (1985); cf. O. Fiss & D. Rendleman, Injunctions 106–108 (2d ed. 1984) (describing courts' nonstatutory discretion, through application of open-ended substantive standards like "irreparable injury," in the injunction context). We have repeatedly characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Serv. Comm'n of Utah* v. *Wycoff Co.*, 344 U. S. 237, 241 (1952); see also *Green* v. *Mansour*, 474 U. S. 64, 72 (1985); *Cardinal Chemical Co.* v. *Morton Int'l, Inc.*, 508 U. S. 83, 95, n. 17 (1993). When all is said and done, we have concluded, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Wycoff, supra*, at 243.

Acknowledging, as they must, the unique breadth of this discretion to decline to enter a declaratory judgment, London Underwriters nonetheless contend that, after *Colorado River* and *Moses H. Cone*, district courts lack discretion to decline to hear a declaratory judgment suit at the outset. See Brief for Petitioners 22 ("District courts *must* hear declaratory judgment cases absent exceptional circumstances; district courts *may* decline to enter the requested relief following a full trial on the merits, if no beneficial purpose is thereby served or if equity otherwise counsels"). We are not persuaded by this distinction. London Underwriters' argument depends on the untenable proposition that a district court, knowing at the commencement of litigation that it will exercise its broad statutory discretion to decline declaratory relief, must nonetheless go through the futile exercise of hearing a case on the merits first. Nothing in the language of the Declaratory Judgment Act recommends Lon-

don Underwriters' reading, and we are unwilling to impute to Congress an intention to require such a wasteful expenditure of judicial resources. If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.

We agree, for all practical purposes, with Professor Borchard, who observed half a century ago that "[t]here is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment action. Borchard, Declaratory Judgments, at 313. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.[2] In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

### III

As Judge Friendly observed, the Declaratory Judgment Act "does not speak," on its face, to the question whether discretion to entertain declaratory judgment actions is vested in district courts alone or in the entire judicial system. Friendly, Indiscretion about Discretion, 31 Emory L.

---

[2] We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy. See, e. g., P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1451, n. 9 (3d ed. 1988).

J. 747, 778 (1982). The Court of Appeals reviewed the District Court's decision to stay London Underwriters' action for abuse of discretion, and found none. London Underwriters urge us to follow those other Courts of Appeals that review decisions to grant (or to refrain from granting) declaratory relief *de novo.* See, *e. g., Genentech, Inc.* v. *Eli Lilly & Co.,* 998 F. 2d, at 936; *Cincinnati Ins. Co.* v. *Holbrook,* 867 F. 2d, at 1333. We decline this invitation. We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp. Cf. *First Options of Chicago, Inc.* v. *Kaplan,* 514 U. S. 938, 948 (1995) ("[T]he reviewing attitude that a court of appeals takes toward a district court decision should depend upon 'the respective institutional advantages of trial and appellate courts'") (citation omitted); *Miller* v. *Fenton,* 474 U. S. 104, 114 (1985) ("[T]he fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question"). While it may be true that sound administration of the Declaratory Judgment Act calls for the exercise of "judicial discretion, hardened by experience into rule," Borchard, Declaratory Judgments, at 293, proper application of the abuse of discretion standard on appellate review can, we think, provide appropriate guidance to district courts. In this regard, we reject London Underwriters' suggestion, Brief for Petitioners 14, that review for abuse of discretion "is tantamount to no review" at all.

IV

In sum, we conclude that *Brillhart* v. *Excess Ins. Co. of America,* 316 U. S. 491 (1942), governs this declaratory judgment action and that district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propri-

ety of granting declaratory relief, should be reviewed for abuse of discretion. We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings. Like the Court of Appeals, we conclude only that the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court. The judgment of the Court of Appeals for the Fifth Circuit is

*Affirmed.*

JUSTICE BREYER took no part in the consideration or decision of this case.