**RUSSELL CORP., Plaintiff,**

v.

**SARA LEE CORP. and Saramar LLC, Defendants.**

**No. 00 C 6329.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 23, 2001.

Kevin Michael Forde, Kevin R. Malloy, Kevin M. Forde, Ltd., Chicago, IL, Allen H. Gerstein, Thomas L. Duston, Robert Michael Gerstein, William J. Kramer, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, for plaintiff.

Edward H. Rice, James R. Ferguson, Christine Marie Rebman, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

KENNELLY, District Judge.

Plaintiff Russell Corp. seeks a declaratory judgment that a patent for a fabric held by defendants Sara Lee Corp. and Saramar LLC (collectively "Sara Lee") is invalid, unenforceable, and not infringed by Russell, as well as a declaratory judgment that Russell did not misappropriate Sara Lee's trade secrets. Sara Lee contends that at the time Russell filed suit, the parties were engaged in licensing negotiations and that Russell preemptively filed suit to ensure that the case would proceed in this District rather than in North Carolina, where Sara Lee says it developed the fabric and most of its witnesses are located. It has moved to dismiss the complaint on the grounds that there is no "actual controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201, or alternatively because the existence of the licensing negotiations should cause the Court to decline to exercise its jurisdiction.

### Facts

On July 1, 1999, the president of a Sara Lee division sent Russell and other companies a letter announcing that Sara Lee had obtained a patent for its "PrintPro" fleece fabric and enclosing a copy of the patent. The letter stated that the patent laws provide for treble damages and attorney's fees in the case of knowing infringement but that "Sara Lee may consider offering licenses on this patent for a reasonable royalty"; it invited inquiries to Sara Lee's in-house patent attorney. In July and August 1999, Robert Veal, outside counsel for Russell, had a series of conversations with Lisa Green, a Sara Lee in-house attorney. Veal told Green that he believed Sara Lee's patent was invalid as anticipated or obvious based on Russell's previous sale of a particular fabric and that Russell was not interested in paying for a license on a patent it believed invalid. In August 1999, Veal sent Green documentation regarding Russell's prior sales and a chart comparing Russell's previously-sold fabric with the claims in Sara Lee's patent. On September 2, 1999, Veal suggested that Sara Lee give Russell a non-exclusive royalty-free license, as a means of resolving the matter.

He says that Green replied that Russell's production of its fabric "created an even more serious situation than she had initially realized." Veal wrote Green on October 8, 1999 to propose a framework for exchanging more information about the parties' positions.

Sara Lee did not respond to Veal's October 1999 letter, and Russell heard nothing more until May 22, 2000, when it received a letter from Thomas Slater, an outside attorney for Sara Lee. Slater said that he had reviewed the materials that Veal had sent to Green and that in his opinion they did not indicate that Sara Lee's patent was invalid. Slater also advised that Russell had "hired away" two former Sara Lee employees with knowledge of "considerable confidential information" involving the PrintPro fabric, its development and marketing. Slater stated that based on his investigation, Russell was manufacturing and selling a product that appeared to be covered by Sara Lee's patent and was using, or inevitably would use, Sara Lee's proprietary information. He asked Russell to provide a description of any steps taken to insulate the former Sara Lee employees from involvement with the product and in the alternative requested a meeting "to discuss a licensing arrangement." The letter did not contain any threat of litigation.

Veal replied to Slater with a letter on June 12, 2000 in which he asked Slater to provide him with an explanation of how Sara Lee's patent avoided Russell's earlier claim of invalidity, denied that the former Sara Lee employees had participated in the development or manufacture of Russell's fabric, and asked for any contrary information. Slater responded with a letter dated August 15, 2000 in which he sought a meeting among counsel "so that we may discuss an amicable resolution of this matter before our client is forced to consider the legal remedies and options available to it."

A meeting was held at Slater's Atlanta, Georgia office on October 2, 2000. Present were Veal, Slater, one of Slater's law partners, and Arthur DeBaugh, a Sara Lee in-house attorney. According to Veal, Slater advised that he and his partner were both litigators; he said that he had tried "lots of these suits" and that trying such cases is how he makes his living. Slater stated that a lawsuit by Sara Lee against Russell would be certain to reach a jury, which could be expected to require Russell to pay substantial damages. When Veal disagreed, Slater "guaranteed" that he would be able to "find at least one fact issue that would ensure that this litigation would go all the way to a trial before a jury." Slater stated that he had just successfully prosecuted a trade secret case in federal court in North Carolina, which was where Sara Lee "intended to bring suit" against Russell. DeBaugh proposed a license under which Russell would pay a 7.5% royalty and a $150,000 up-front payment. He stated that while Sara Lee was "not in the business of suing people," it would "act to protect [its] investment." According to Veal, he responded that he saw no reason for Russell to pay royalties on an invalid patent and that Russell would agree only to refrain from bringing a declaratory judgment action to invalidate the patent if Sara Lee provided a royalty-free license. He says that Sara Lee's representatives "laughed" at his proposal and said it was unacceptable.

Before leaving the meeting, Veal says that he told the Sara Lee representatives that he would communicate their proposal to Russell but that he would not recommend its acceptance and expected that Russell would not find the proposal or anything approaching it to be acceptable. He claims that Sara Lee's representatives reemphasized that their offer was firm and that they were serious about their positions on the issues. DeBaugh says that he told Veal at the meeting that the proposal was negotiable and asked for a counteroffer. He says that Veal replied that he had no authority to accept or decline the offer but would talk to Russell's general counsel and expected to respond to the offer.

Ten days later, on October 12, 2000, Russell filed this action.

### Discussion

■ The Declaratory Judgment Act authorizes a court to declare the rights of an interested party in "a case of actual controversy." For this to exist in a case of this type, there must be "both '(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.'" *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1052 (Fed.Cir.1995) (quoting *BP Chemicals, Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993)). Sara Lee contends that it took no action creating a "reasonable apprehension" that it would sue Russell.

■ If Russell had filed suit prior to the October 2 meeting, the Court would not hesitate to agree with Sara Lee. Prior to that date, though Sara Lee had made an oblique suggestion of possible infringement by Russell, it had not expressly or implicitly threatened litigation. Its proposal of a licensing arrangement by itself was not enough to create an "actual controversy." *Phillips Plastics,* 57 F.3d at 1053–54; nor was the fact that Sara Lee had made some of its later communications through outside counsel.[1]

All of this changed, however, at the October 2 meeting. Sara Lee does not challenge Veal's characterization of Slater's comments at the meeting; thus on the present record it is undisputed that Slater threw down the gauntlet to Veal and essentially told Veal that he was ready to file suit in North Carolina if an arrangement acceptable to Sara Lee was not reached. Slater went on to advise that he was certain that the case would end up being tried to a jury and that substantial damages would be awarded. It can scarcely be disputed that this was sufficient to give rise to a reasonable apprehension on the part of Russell that it would be sued. *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811–12 (Fed.Cir.1996); *Millennium Products Inc. v. Gravity Boarding Co.,* No. 00 C 4015, 2000 WL 1898580 (N.D.Ill.Dec.20, 2000).

■ The real issue in this case is whether the Court should decline to exercise jurisdiction because of the existence of ongoing licensing negotiations. "Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction." *EMC,* 89 F.3d at 813. The Supreme Court has noted that the Declaratory Judgment Act accords district courts a "unique breadth of . . . discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In *EMC,* the president of a consulting company representing the patentee wrote to the plaintiff suggesting that the parties initiate license negotiations. After receiving no reply, the consultant again wrote to suggest negotiations, this time adding that the patentee had asked him turn the matter over to its outside patent counsel, but that he wanted to have a preliminary business discussion, "perhaps avoiding this matter escalating into a contentious legal activity." 89 F.3d at 809. Meetings ensued at which the potential sale or license of the patents was discussed. Plaintiff claimed that defendant's representatives made express claims of infringement; defendant denied this and also denied that its representatives had threatened suit. After a meeting at which defendant advised plaintiff that there were other companies in plaintiff's market that defendant was approaching to discuss licensing or sale of the patents, plaintiff filed a declaratory judgment action. *Id.* at

---

1. Russell notes that biographical information on Slater disseminated by his law firm emphasizes his litigation skills. But prior to the October 2 meeting, Slater himself had done nothing to suggest that he had been brought on board in order to initiate litigation.

809. Following the filing of suit, plaintiff's attorney told defendant's attorney that the action had been filed as "merely a defensive step" because "it was in [plaintiff's] interest to protect themselves first," but that plaintiff still would like to continue negotiating. *Id.*

Faced with this scenario, the district court in *EMC* declined to exercise jurisdiction, believing that to do so would encourage parties negotiating with patentees to use the declaratory judgment procedure as leverage to improve their bargaining position and to impede negotiations between the patentee and other potential licensees or buyers; it suggested that the plaintiff may have filed suit in the hope of forestalling the sale of the defendant's patents to a competitor of the plaintiff. *Id.* at 810, 814. The Federal Circuit held that an "actual controversy" existed but declined to disturb the district court's discretionary decision not to exercise its jurisdiction. It held that it was appropriate for a court to take into account the pendency of serious negotiations to sell or license a patent in determining whether to exercise jurisdiction. The court said that "[w]hile a court may conclude that ongoing negotiations do not negate the presence of a controversy for jurisdictional purposes, the court may nonetheless find, in deciding whether to hear the declaratory judgment action, that the need for judicial relief is not as compelling as in cases in which there is no real prospect of a non-judicial resolution of the dispute." *Id.* at 814.

The fact that the Federal Circuit declined to overturn the trial court's discretionary determination in *EMC* does not suggest a rule that so long as a license has been proposed, the alleged infringer should be precluded from bringing a declaratory judgment action. Certainly a party should not be permitted to itself initiate negotiations and use them to lull its prospective opponent into delaying suit so that it can strike the first blow itself. And there may be cases, like *EMC,* in which there are indications that the declaratory judgment plaintiff filed suit for the purpose of gaining leverage in negotiations that plainly were ongoing and had not reached an impasse. But that is not what happened here. Russell did not initiate the negotiations; it simply responded to Sara Lee's requests to talk and to meet and made it clear from the start that it believed Sara Lee's patents to be invalid. There is no indication that Russell sought to lull Sara Lee into a false sense of security at the October 2 meeting; though Veal said (as he was required to do consistent with his obligations as outside counsel) that he would take Sara Lee's proposal back to Russell, he also made it clear that he considered Sara Lee's proposal unacceptable, would not recommend it, and believed that Russell would reject it out of hand.

Russell was engaged in an ongoing commercial activity (selling its product); Sara Lee's counsel sought to wave the club of a possible lawsuit in its home court in order to convince Russell that resistance was futile. As the Federal Circuit has noted, the very purpose of the Declaratory Judgment Act is "to enable those threatened to remove such a cloud on their commercial activity, instead of being obliged to await the convenience of the threatening party." *Phillips Plastics,* 57 F.3d at 1053. It would thwart that purpose were the Court to decline to exercise jurisdiction here. We see no basis to impose what would amount to a requirement that a party engage in and complete ADR before filing suit. Russell was directly threatened with a lawsuit unless it paid for a license, something it was unwilling to do; under the circumstances, it is entitled to have its rights determined.

### Conclusion

For the foregoing reasons, the Court denies Sara Lee's motions to dismiss [Items 15–1, 18–1]. Sara Lee's motion to extend time to answer or otherwise plead to Count 5[8–1] is terminated as moot, and its motion to take limited discovery [17–1] is also terminated, as it was ruled upon on December 20, 2000. Sara Lee is directed to answer the complaint on or before Feb-

ruary 6, 2000. The case is set for a Rule 16(b) conference in chambers on February 21, 2000 at 9:00 a.m. for the purpose of setting a comprehensive discovery and pretrial schedule.