**EMPLOYER'S REINSURANCE CORP., Plaintiff,**

v.

**Larry DILLON, et al., Defendants.**

**No. CIV.A. 01–D–406–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 15, 2001.

Annette Talley Phebus, Gaines Wolter & Kinney, Daniel S. Wolter, Gaines Wolter & Kinney, Birmingham, AL, for Plaintiff.

Steven F. Casey, Balch & Bingham, Birmingham, AL, Christina D. Crow, Jinks, Daniel, Crow & Seaborn, LLC, Union Springs, AL, Richard M. Gaal, McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, AL, Julie M. Jarrell, Balch & Bingham, Birmingham, AL, P. Russel Myles, McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, AL, C. Gibson Vance, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for Defendants.

AXA Corp. Solutions, c/o Prentice Hall Corporation, Montgomery, AL, Pro se.

Colonial Life, CSC Lawyers, Inc., Montgomery, AL, Pro se.

D & S Transportation, Unknown Address, Pro se.

D.I.S., Inc., Eufala, AL, Pro se.

Ethan R. Dettling, Roberts & Fish, P.C., Birmingham, AL, Pro se.

Larry Dillion, Eufala, Al, Pro se.

Great American Ins., c/o Corporate Company, Montgomery, AL, Pro se.

Great West Calualty, c/o Scott Roberts, Birmingham, AL, Pro se.

Jernigan Enterprises, Unknown Address, Pro se.

Lincoln General Ins., Carr, Allison, Pugh, Howard, Oliver & Sisson, PC, Birmingham, AL, Pro se.

National Indemnity, c/o Robert E. Parsons, Birmingham, AL, Pro se.

Progressive Company, c/o John Matthews, Jr., Montgomery, AL, Pro se.

Realm National Ins., New York City, Pro se.

Scott M. Roberts, Roberts & Fish, P.C., Birmingham, AL, Pro se.

Royal Surplus Lines, c/o Joyce Wheeler, Charlotte, NC, Pro se.

Vesta Insurance Co., c/o Corporate Company, Montgomery, AL, Pro se.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court are two Motions To Stay the present matter, filed by Defendant Progressive Specialty Insurance Company ("Progressive") on August 22, 2001 (Doc. No. 23) and by Defendant Roger Yarborough f/d/b/a Tim's Towing & Recovery ("Yarborough") on August 30, 2001. (Doc. No. 25.) Plaintiff Employer's Reinsurance Corporation ("ERC") filed an Opposition on September 7 (Doc. No. 27), to which Progressive filed a Reply on September 25. (Doc. No. 28.) After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motions are due to be granted.

## BACKGROUND

The present cause of action arises out of the alleged misdealings of Defendant Larry Dillon ("Dillon") through and on behalf of Defendant D.I.S., Inc. ("D.I.S.") At the time relevant to this action, Dillon and D.I.S. were engaged in the business of selling automobile insurance for Progressive. When it became known to Yarborough that a number of the insurance policies he had purchased from them had lapsed, he brought suit against Progressive, Dillon, and D.I.S. in the Circuit Court of Barbour County, Alabama alleging, inter alia, fraud and negligence in the procurement of these policies.

Dillon and D.I.S. are insured against actions concerning professional liability due to a reinsurance policy they purchased from ERC. Although ERC has begun to represent them in the state law matter, approximately five months after those proceedings had begun, ERC invoked the diversity jurisdiction of the present tribunal, seeking a declaratory judgment as to the scope of the policy's coverage. ERC has asked the court to interpret the professional liability policy so that it can be determined whether or not ERC is required to continue its representation of Dillon and D.I.S. in state court.

The relevant portion of the liability policy reads as follows:

> The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductions stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by: (a) any negligent act, error or omission of the Insured or any person for whose action the Insured is legally liable ... arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker....

(Policy § I.) The scope of the coverage does not come without limitations, however. The original policy explicitly excludes "dishonest, fraudulent, criminal, or malicious" acts, as well as "the failure to collect, pay or return premiums." (*Id.* at § VI.) This language was subsequently amended, however, such that the policy now covers the "dishonest, fraudulent, criminal, or malicious acts committed by an employee of the Named Insured ... provided that such Insured did not personally participate in or ratify" the act in question. (*Id.* at § V.)

In the time since ERC filed the present declaratory judgment action, a number of additional cases have been filed in state court against Dillon and D.I.S. alleging similar wrongdoing. Given the similarities between the state actions, ERC has amended its complaint on numerous occasions such that the court's decision might effectively shield it from all ongoing proceedings in the state courts. Defendants

Yarborough and Progressive have asked the court to stay the present declaratory judgment action until the issues below more fully develop. For the reasons discussed below, the court believes this to be the prudent course of action.

## DISCUSSION

In the Declaratory Judgment Act, Congress provided that, under certain circumstances, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The permissive rather than mandatory language inherent in the grant of authority has compelled the Supreme Court to conclude that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). While the "existence of another adequate remedy does not preclude a judgment for declaratory relief," Fed.R.Civ.P. 57, "the existence of an ongoing state proceeding involving the same issues as the declaratory judgment is the most potent factor" used by courts in the Eleventh Circuit in properly determining how to proceed. *Universal Underwriters Serv. Corp. v. Melson*, 953 F.Supp. 385, 387 (M.D.Ala.1996).

Deference to this lodestar has justifications in fairness, efficiency, and federalism. It is unfair to override a party's original choice of forum by requiring it not only to address its claims in state court but also to make the same arguments in federal court. This is especially true when the issues arise before the court solely due to the happenstance of citizenship; federal courts should be reluctant to address state law issues which might redirect the ongoing proceedings in state courts. *See United States Fidelity and Guar. Co. v. Algernon–Blair, Inc.*, 705 F.Supp. 1507, 1514 (M.D.Ala.1988) (cautioning against "unnecessary commitment of scarce judicial resources, multiplicative expenditures of legal services, inconsistent rulings at numerous litigation junctures, and the apparent disregard for the state trial court's authority and expertise").

ERC is asking the court to find that the actions performed by Dillon and D.I.S. lie outside of the scope of coverage offered by their professional liability policy. A cursory glance at the language of the insurance policy certainly suggests that its coverage extends to some intermediate point on the continuum between negligent and intentional wrongdoing. The court surmises that wantonness might represent this demarcation, but it cannot conclude which side of coverage such behavior might fall. Presumably it is this question to which ERC seeks a definitive answer, but even were the court to clarify the insurance policy, its applicability to the acts of Dillon and D.I.S. could not take place without a determination as to the nature of their alleged wrongdoing. But this is the very issue presently pending in the state court proceedings.

Each of the parties to the present action is currently engaged in the discovery process in state court. In due course a revelation will surface and the state court judges will conclusively determine the legal status of the alleged wrongdoings carried out by Dillon and D.I.S. ERC has provided the court with no reason why this process should be duplicated in the present forum beyond its own desire to immediately shield itself from further litigation. Not only would the court's denial of a stay impose additional burden on the parties, it would run the risk of inconsistent findings of fact between the state and federal systems. Moreover, nowhere has ERC provided the court with any evidence to sug-

gest that the Alabama courts lack the competence to address the very issue it seeks from the present court. A federal court has no particular expertise in matters of contract interpretation that is lacking in its state counterparts. "The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court." 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2758, at 519–21.[1]

Finally, and perhaps most significantly, the state court proceedings might very well render the present action moot. It could turn out that Dillon and D.I.S. have committed no legal wrong, in which case the "time and effort the court and the parties would have expended in resolving the issue would be wasted." *Guar. Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F.Supp. 1510, 1515 (M.D.Ala.1996). Furthermore, the state courts could conceivably find that Dillon and D.I.S. acted either negligently or maliciously in which case the determination of professional liability coverage would be straightforward. Again, the court is unclear as to why the latter determination cannot be made by the state courts, but rather than outright dismissal of the present action, it is prepared to grant a stay until the relevant issues fully ripen. *See Wilton*, 515 U.S. at 288 n. 2, 115 S.Ct. 2137 ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course [in the event that the state case] fails to resolve the matter in controversy.").

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED as follows:

(1) Defendants' Motions To Stay be and the same are hereby GRANTED.

(2) The Clerk of the Court is DIRECTED to REMOVE this action from the court's active docket and to PLACE said action on the court's administrative docket, with leave for either party to move to reinstate same on the active docket when and if appropriate.

(3) Such reinstatement will cause the filing date of the action to relate back to the original filing date of this action.

1. It is worth noting that the court can invoke jurisdiction over the present matter only because ERC's citizenship differs from each of the respective Defendants, but these Defendants are non-diverse plaintiffs and defendants in the state action thereby precluding removal.