PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PENN-AMERICA INSURANCE COMPANY,
*Plaintiff-Appellant,*

v.

GREGORY COFFEY; STEVEN SIMONS;
A.J.Z., INCORPORATED, t/a A. J.
Gators Grille & Sports Bar; STATE
FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; JAMES A.
SIZEMORE,

No. 03-1137

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(CA-02-632-2)

Argued: February 26, 2004

Decided: May 20, 2004

Before NIEMEYER and MICHAEL, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Michael and Senior Judge Hamilton
joined.

## COUNSEL

**ARGUED:** Geoffrey Martin Bohn, CUNNINGHAM & ASSO-
CIATES, Arlington, Virginia, for Appellant. Richard Cunningham,

Appellate Litigation Clinic, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellees. **ON BRIEF:** Steven H. Goldblatt, Director, Cary Berkeley Kaye, Supervising Attorney, James M. Sullivan, Appellate Litigation Clinic, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellees.

---

## OPINION

NIEMEYER, Circuit Judge:

Penn-America Insurance Company commenced this action to obtain a declaratory judgment that it had no duty to defend or to indemnify its insured, A.J. Gators Grille & Sports Bar ("A.J. Gators"), with respect to a tort action filed against A.J. Gators by James Sizemore in the Circuit Court of the City of Chesapeake, Virginia. Sizemore's suit seeks damages for injuries he sustained in the A.J. Gators parking lot when he was struck by an automobile driven by another customer of A.J. Gators. The district court dismissed the declaratory judgment action, concluding that exercising jurisdiction would require resolution in this case of the same factual issues in dispute in the state tort action. For the reasons that follow, we disagree. Accordingly, we reverse the district court's dismissal order and remand for further proceedings.

I

On April 5, 2001, while patronizing A.J. Gators in Chesapeake, Virginia, Gregory Coffey and Steven Simons became aggressive and hostile toward other customers and toward A.J. Gators employees. When several employees confronted Coffey and Simons, "insults, threats and blows were exchanged," and Coffey and Simons either left or were removed from the premises. The A.J. Gators employees pursued Coffey and Simons into the parking lot where "a protracted and violent fight erupted" between Coffey and Simons and the employees. As Coffey and Simons drove away in Coffey's automobile, the A.J. Gators employees struck both the automobile and the occupants "with fists and metal pipes," leading Coffey to lose control of his vehicle and strike James Sizemore, a bystander in the parking lot who had just left the bar.

Sizemore filed a personal injury action in state court against Coffey and Simons, as well as A.J.Z., Inc. ("A.J.Z."), the owner of A.J. Gators, alleging (1) negligence by A.J. Gators and its employees; (2) negligence by Coffey and Simons; (3) intentional, malicious, and reckless action by A.J. Gators supervisors who directed employees to pursue and assault Coffey and Simons despite knowing patrons would likely be injured; and (4) intentional, malicious, and reckless action by, and agreement between, Coffey and Simons to use a vehicle to strike one or more A.J. Gators employees, for whom they mistook Sizemore. That action is still pending.

Shortly after the state court action was commenced, Penn-America, A.J.Z.'s insurer, commenced this action, invoking diversity jurisdiction under 28 U.S.C. § 1332 and seeking a declaratory judgment that the claims filed by Sizemore against A.J.Z. in state court were excluded from the coverage of the Penn-America liability policy issued to A.J.Z. because of an "Assault and Battery Exclusion." In particular, the policy excludes from coverage claims "resulting from assault and battery or physical altercations," regardless of whether the claimant's injuries were caused by A.J.Z., its employees, or its patrons. Penn-America named as defendants all of the parties to the state court action, as well as State Farm Mutual Automobile Insurance Company, Sizemore's automobile insurer, because Sizemore's policy included coverage for uninsured and underinsured motorists such as Coffey and Simons.

Sizemore filed a motion to dismiss this action, urging the district court not to adjudicate the coverage question while the state court case was pending. The district court granted Sizemore's motion to dismiss and, *sua sponte*, dismissed the action as to all defendants. The district court concluded that to decide whether Penn-America was obligated to defend and indemnify A.J.Z. would require resolution of the same factual issues of causation raised in Sizemore's underlying state court action — i.e., whether Sizemore's injuries resulted from assault and battery. The court also noted that the Commonwealth of Virginia has an inherent interest in deciding matters of state law.

Penn-America filed this appeal, and only Coffey and Simons have filed a brief and presented oral argument in opposition — principally because we appointed counsel for them to protect their interests on

appeal. Neither Sizemore nor A.J.Z. elected to file a brief or appear at oral argument.

## II

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Thus we review for abuse of discretion a district court's decision whether to hear a federal declaratory judgment action. *Id.* at 289-90.

As an initial matter, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). When a related state court proceeding is pending, however, "'considerations of federalism, efficiency, and comity'" should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action. *See id.* at 257 (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)). As the Supreme Court stated in *Wilton*,

> where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference" . . . if it permitted the federal declaratory action to proceed.

*Wilton*, 515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

To determine whether to proceed with a federal declaratory judgment action when a parallel state action is pending, we have focused on four factors for guiding the analysis:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998) (quoting *Nautilus Ins.*, 15 F.3d at 377) (the "*Nautilus* factors").

To make its decision, the district court focused principally on the third *Nautilus* factor, concluding that "[i]n determining whether the [assault and battery] exclusion applies, this court must resolve the factual issues surrounding the altercation and the injury to Sizemore to determine whether Sizemore's injuries 'result[ed] from assault and battery.'" Because "[t]hese issues of causation are the very issues that must be litigated in the state court case as well," the district court concluded that there were "overlapping issues of fact or law that would cause entanglement between the state and federal court systems." Thus, the core question that we must resolve is whether the district court's efforts to decide the coverage issue would result in entanglement, through gratuitous interference, with state court proceedings by preempting critical factual findings that the state court will have to make in resolving Sizemore's personal injury claims. For two distinct reasons, we conclude that the district court can resolve the coverage dispute in this case without such entanglement.

*First*, the duty-to-defend question in this case will not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what Sizemore *has alleged* in the state court action with the language of the Penn-America insurance policy. Under Virginia law, an insurer's duty to defend arises "whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy."

*Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990); *see also Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265-66 (Va. 1996). And there is no duty to defend "if it appears clearly that the insurer would not be liable under its contract for any judgment *based upon the allegations*." *Brenner*, 397 S.E.2d at 102 (emphasis added). Although an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty *to defend* because the allegations, even when taken as proved, would fall outside the policy's coverage.

In this case, therefore, the district court was presented with the task of determining whether *the allegations* of the complaint, if proved, would bring the claim within the coverage of the Penn-America policy. Under the terms of that policy, Penn-America has no duty to defend or indemnify A.J.Z. if Sizemore's injuries "result[ed] from assault and battery or physical altercations" — regardless of whether the injuries (1) were "caused by . . . or with the direct or indirect involvement of" A.J. Gators, its employees or patrons; (2) arose out of A.J. Gators' "failure to properly supervise or keep [its] premises in a safe condition"; or (3) arose out of A.J. Gators' failure to prevent or suppress the physical altercation, including a failure that resulted from negligent training. Thus, unless Sizemore's injuries allegedly resulted, in part, from some action by A.J. Gators' employees distinct from their role in the physical altercation, then the assault and battery exclusion would apply. In deciding that question, the district court need not make independent findings as to what actually occurred on April 5, 2001, but rather need only decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion.

*Second*, the finding of causation necessary to decide whether Sizemore's injuries "resulted from" a physical altercation is distinct in kind from the causation questions that will have to be resolved in deciding whether Sizemore recovers on his tort claims. To resolve the coverage question, the court must decide, based on facts alleged in the complaint, whether Sizemore's injuries "resulted from" — in the contractual language of the policy — "assault and battery or physical altercations that occur[red] in, on, near, or away from [A.J. Gators'] premises," regardless of whether the injuries were caused by A.J.

Gators employees or patrons, or whether the injuries arose out of A.J. Gators' failure to supervise its employees, failure to maintain its premises in safe condition, or failure to train its employees properly. In other words, the court need only decide the scope of the *contractual* language, "resulted from," regardless of *who caused* Sizemore's injuries. On the other hand, in the state court proceeding, the factfinder will have to determine whether Sizemore's injuries were "proximately caused" by any of the defendants during the events on April 5, 2001, assessing responsibility to each. As the district court observed, constructing the chain of causation may be a complex task as the factfinder must determine the causal contribution of each defendant's conduct to Sizemore's injuries and resolve questions of intervening causation. But it is not necessary to resolve those issues before defining the scope of the contract's assault and battery exclusion.

None of the remaining three *Nautilus* factors plays a particularly important role, as the district court observed, in assessing whether the declaratory judgment action should be decided now. On the first factor, while the State certainly has a strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law, to defer to the state court tort case in the circumstances before us will not advance the State's interests significantly because (1) the contractual coverage issue will not be decided by the state tort case, and (2) Penn-America is not a party to the state case. Moreover, as we have observed, the State's interest is "not particularly significant" where any state law issues are standard and "unlikely to break new ground." *Kapiloff*, 155 F.3d at 494.

The second *Nautilus* factor — whether the state court could resolve the issues more efficiently — is indeterminate for similar reasons. Because Penn-America is not a party in the state action and it is not clear under Virginia rules that Penn-America could intervene to have coverage issues decided within the scope of the underlying tort case, dismissing the federal coverage case would not seem to advance any cause of efficiency.

Finally, on the last *Nautilus* factor of whether Penn-America is procedurally fencing or forum-shopping in prosecuting the federal declaratory judgment action, no party has advanced convincing evi-

dence that Penn-America is doing so in this case. There is a live and serious question of whether the assault and battery exclusion in the policy issued to A.J.Z. applies, and the evidence in the record leads to the conclusion that Penn-America has appropriately sought a declaratory judgment in federal court to clarify and settle the issue.

At bottom, we conclude that the district court can address the coverage question presented by Penn-America without becoming entangled in the tort issues that must be decided in resolving Sizemore's state law tort claims and that the court should not have refused to exercise the federal jurisdiction invoked with the commencement of this declaratory judgment action. As the district court itself recognized, a declaratory judgment in this action would "clarif[y] and settl[e] the legal relations in issue" and would "terminate and afford relief from the [coverage] controversy." *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). Accordingly, we reverse the district court's order of dismissal and remand this case for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*