**LEATHER FORM S.R.L. and Casprini Gruppo Industriale S.P.A., Plaintiffs–Appellants,**

v.

**KNOLL, INC., Defendant–Appellee.**

**No. 05–6994–cv.**

United States Court of Appeals, Second Circuit.

Nov. 2, 2006.

Nicole M. Meyer, Dickinson Wright PLLC (Samuel D. Littlepage, Dickinson Wright PLLC, Washington, DC, Aidan M. McCormack, Erik W. Drewniak, Nixon Peabody LLP, New York, NY, on the brief), for Appellants.

Thomas C. Morrison, Patterson, Belknap, Webb & Tyler LLP (Evan Mandel, Patterson, Belknap, Webb & Tyler LLP, on the brief), New York, NY, for Appellees.

PRESENT: Hon. RALPH K. WINTER, Hon. JOSEPH M. McLAUGHLIN, Hon. CHESTER J. STRAUB, Circuit Judges.

### SUMMARY ORDER

Plaintiffs–Appellants Leather Form S.R.L. and Casprini Gruppo Industriale S.P.A. (collectively, "Casprini") appeal the judgment of the District Court for the Southern District of New York (Jed S. Rakoff, *Judge*), declining to exercise jurisdiction under 28 U.S.C. § 2201(a) over Casprini's declaratory judgment action, and dismissing Casprini's complaint. We assume the parties' familiarity with the facts and issues on appeal.

Casprini brought this action seeking a declaratory judgment regarding a 1965 Agreement between the designer Mies van der Rohe and Knoll, Inc.'s predecessor Knoll Associates, Inc., in which Mr. van der Rohe agreed to "sell, assign and convey all of [his] right, title and interest in [his] designs and the exclusive use of [his]

name in connection with [such] sale in the United States and elsewhere." The 1965 Agreement is governed by New York law pursuant to a choice-of-law provision. Casprini argued below that this language contains a "latent ambiguity," and claimed that extrinsic evidence would show that the signatories to the 1965 Agreement intended to transfer only domestic rights to the designs.

Casprini is currently engaged in the manufacture and sale of the designs in the United States and Europe. In 2003, Knoll, Inc.'s subsidiary, Knoll International S.P.A., brought suit in Germany against one of Casprini's distributors. Casprini intervened in that action, but was not permitted to introduce evidence in support of its "latent ambiguity" theory. On January 21, 2005, the German court held that the 1965 Agreement conveyed worldwide copyrights to Knoll, and enjoined Casprini's distributor from continuing to sell or advertise the designs. This decision is currently on appeal. On February 3, 2005, Knoll International brought a second suit in Germany, this time against Casprini itself. The latter litigation, brought on February 3, 2005, is ongoing. Casprini brought this action in the Southern District of New York on August 5, 2005, seeking a declaration that its manufacture, distribution, sale, offering for sale and advertising of reproductions of certain items of furniture do not infringe upon or otherwise violate any rights claimed by Knoll under the 1965 Agreement. The District Court declined to exercise jurisdiction over Casprini's action.

The Declaratory Judgment Act vests the district courts with discretion to determine whether they will exert jurisdiction over a proposed declaratory action or not. 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration ....") (emphasis added). "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir.2003) (citing, *inter alia, Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). Moreover, "this broad discretion is reviewed deferentially, for abuse of discretion." *Id.*

In exercising its discretion, the District Court considered five factors, all of which it found weighed against taking jurisdiction of the case. These factors are drawn from our decision in *Dow Jones*, in which we re-articulated the two factors traditionally considered in this Circuit, namely "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty," and recognized that "[o]ther circuits have built upon this test, to ask also: (1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Id.* Where the district court's exercise of discretion is based on these five factors, we will not entertain "argument[s] that the district court should have balanced the various factors differently," but will affirm unless "we ... believe that the district court's decision is premised on an erroneous view of the law, [or] a clear error of fact." *Id.* at 360.

▮ In this case, we do not believe that the District Court abused its discretion.

In particular, we do not think that the District Court erred in taking into account the tenuous merits of Casprini's case under New York law when considering whether a declaratory judgment would serve a useful purpose.[1] *See Wilton,* 515 U.S. at 287, 115 S.Ct. 2137 (holding that "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.... In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

■ Nor do we see any error in the District Court's weighing of the remaining factors. We think that the District Court correctly determined that a ruling by a United States court would not serve to finalize the controversy between the parties, which is in Europe; as Casprini concedes, here and below, the declaration of an American court would merely be "instructive" as to the parties' rights in Germany. We see no reason to disturb the District Court's finding that "the instant action is nothing but an attempt to circumvent the holdings and jurisdictions of the German courts," or that "the German legal process offers an adequate remedy and will more effectively address the parties' actual dispute. While we do not believe that the risk of friction between legal systems, under these circumstances, is so

great that by itself it would require the District Court to decline jurisdiction, given the strength of the other factors we do not think the District Court's decision was an abuse of discretion.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

1. Under well-established New York law, where a contract is unambiguous on its face, extrinsic evidence is not admissible to challenge its meaning. *Nichols v. Nichols,* 306 N.Y. 490, 496, 119 N.E.2d 351 (N.Y.1954). A "latent ambiguity is where you show the words apply equally to two different things or subject-matters, and then evidence is admissible to show which of them was the thing or subject-matter intended." *Petrie v. Trustees of*

*Hamilton College,* 158 N.Y. 458, 464, 53 N.E. 216 (N.Y.1899). There is no ambiguity in the 1965 Agreement, latent or otherwise, as to the geographic scope of the transfer of rights. The 1965 Agreement plainly transfers *"all . . .* right, title and interest" in the designs, without geographic limitation; moreover, the 1965 Agreement explicitly states that it "sold, assigned and conveyed . . . exclusive *world wide* rights."