# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-3342

JAMES D. SHALES, JOHN PAVLAK, and TAMARA L. SMITH,

*Plaintiffs,*

*v.*

GENERAL CHAUFFEURS, SALES DRIVERS AND
HELPERS LOCAL UNION NO. 330, *et al.*,

*Defendants-Appellees.*

Appeal of:

JAMES GORDON BANKS

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8358—**George W. Lindberg**, *Judge.*

ARGUED SEPTEMBER 22, 2008—DECIDED FEBRUARY 27, 2009

Before EASTERBROOK, *Chief Judge*, and ROVNER and
WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* After a contested union
election, the losers sued the winners under a variety of

theories, including racketeering. All aspects of the suit eventually were resolved in defendants' favor, because the plaintiffs could not prove what the complaint alleged. During discovery it became evident that many of the allegations were fanciful. One plaintiff, for example, contended that the successful candidate for president of the local union had intentionally inflicted emotional distress by threatening to fire her if he won. The evidence showed that, whatever she may have heard through the grapevine, he had not made such a threat; after the election he kept her on with a raise. As a matter of state law, a claim of intentional infliction of emotional distress also requires proof of some severe reaction, and this plaintiff offered none other than an asthma attack more than a year after the election—and she had suffered from occasional asthma attacks for 25 years. Other claims were as weak, or worse.

As discovery continued and it became ever more evident that the complaint lacked a basis in fact, counsel for the defendants began to send letters demanding that particular claims be deleted from the complaint and withdrawn from the litigation. James Gordon Banks, who represented the plaintiffs, did not reply to any of these requests. When the case was over, defendants sought sanctions under 28 U.S.C. §1927 on the theory that Banks had vexatiously multiplied the proceedings, and under Fed. R. Civ. P. 11 on the theory that Banks had failed to make a reasonable investigation before filing suit and had advocated the complaint long after it became clear that the allegations were unfounded. The district judge granted defendants' motion for sanctions, see 2007 U.S.

Dist. LEXIS 22243 (N.D. Ill. Mar. 26, 2007), and asked defendants to delineate the attorneys' fees incurred to defeat the suit. Defendants collectively asked for some $200,000, but the judge thought this excessive and concluded that reasonable fees had been approximately $80,000, which he ordered Banks to pay. 2007 U.S. Dist. LEXIS 57044 (N.D. Ill. Aug. 6, 2007).

Banks asked the judge to reduce this award, representing that his only assets are $2,000 in cash, his watch, his clothing, and his wedding band. He does not carry malpractice insurance, because he has no significant assets to insure. Defendants replied that Banks has a legal education and thus a potential to earn enough to pay—and, the defendants observed, the reason Banks does not own much is that the family home, cars, and savings all are in his wife's name. With the odor of a fraudulent conveyance in the air, the district judge denied Banks's motion to reduce the award.

Defendants contend that Banks's appeal is untimely. The decision sought to be reviewed was entered on August 6, 2007, and the notice of appeal was not filed until September 27, more than 30 days later. But on August 20 Banks had filed a motion to reconsider, which the district court denied on August 28. The appeal was filed 30 days later and is timely, if the motion suspends the decision's finality under Fed. R. App. P. 4(a)(4). The motion was filed within 10 business days (weekends are excluded from the count, see Fed. R. App. P. 26(a)(2)), so it was timely if it is on the list in Rule 4(a)(4)(A). And that list includes both a motion to amend the judgment under

Fed. R. Civ. P. 59 and a motion for relief under Fed. R. Civ. P. 60, if filed within ten business days.

What defendants say is that Banks's motion does not count, despite its caption (it invoked both Rule 59 and Rule 60), because it did not present a good argument. But Rule 4(a)(4) refers to types of motions (effectively, to kinds of relief sought), not to whether the motion is well taken. See *Urso v. United States*, 72 F.3d 59 (7th Cir. 1995). If a party had to present a *good* argument for relief, the rule might as well be rewritten to say that the time for appeal runs from the district court's original decision, unless that decision is actually amended in response to a later motion. The actual rule, however, provides that the existence of a motion, and not the motion's merit, is what suspends the time for appeal. No other approach is feasible. Jurisdictional time limits must be ascertained mechanically. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988). Litigants, and a court of appeals, can ascertain in a mechanical fashion whether, and when, a particular motion has been filed. Making appellate jurisdiction turn on the motion's substance would introduce a quagmire into appellate practice. Banks made a kind of motion that resets the clock for an appeal, and he filed the notice of appeal within 30 days of the motion's denial. The appeal is proper.

Banks's principal argument is that Rule 11 is not a pure fee-shifting statute, so ability to pay should be taken into account. This is true as far as it goes. "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct

by others similarly situated." Fed. R. Civ. P. 11(c)(4). The poorer the lawyer, the lower the sanction can be and still deter repetition by the lawyer or anyone similarly situated. Cf. *Leister v. Dovetail, Inc.*, 546 F.3d 875, 883–84 (7th Cir. 2008); *Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499, 507–08 (7th Cir. 1992). A district judge therefore should take the sanctioned party's resources into account when setting the amount of a Rule 11 sanction. See *Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994). But the district judge imposed sanctions under §1927, a real fee-shifting law, as well as Rule 11. An award under §1927 depends (as an award under Rule 11 does not) on a finding of bad faith. It is awfully hard to see why a lawyer who acted in bad faith should be let off lightly. Banks's brief essentially ignores §1927, but that does not make it go away.

A violation of §1927 is a form of intentional tort. And there is no principle in tort law that damages depend on a tortfeasor's assets. Quite the contrary. Damages depend on the victim's loss, not the wrongdoer's resources. A physician who injures a patient by an act of medical malpractice will be ordered to pay whatever injury the malpractice causes. The physician's assets—and whether he holds his property in a relative's name—will not play any role in determining the amount of damages. So too if Banks had walked up to Dominic Romanazzi, the principal defendant (he beat Shales in the 2003 election for President of Local 330), and punched Romanazzi in the mouth. The damages for battery would depend on Romanazzi's injury, not on Banks's wealth. Likewise if Banks has slandered Romanazzi. Instead of hitting Romanazzi with a fist or an

insult, Banks hit him with a lawsuit. Again damages depend on injury, once the judge concludes that the litigation was tortious. (We speak here of compensatory rather than punitive damages in tort litigation; the award under §1927 is compensatory, not punitive.)

A physician only four years out of medical school does not get a discount on his malpractice judgments; Banks's observation that he was only four years out of law school when he took this case does not give him a license to injure others by making unsupported assertions and clinging to them long after their falsity has been revealed. This would be plain enough if Banks had injured his own client by malpractice; the proposition is no different when he injures his client's adversary. We therefore agree with *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1206 (10th Cir. 2008), that a lawyer's ability to pay does not affect the appropriate award for a violation of §1927. (Several cases in this circuit, of which *Fox Valley Construction Workers v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 667 (7th Cir. 1998), is an example, assume that district judges may consider the lawyer's wealth but hold that it is never necessary to do so. These decisions lump together analysis under Rule 11 and §1927, apparently because the parties did the same. For reasons we have given, it is necessary to distinguish these two sources of authority. No case we could find in this circuit holds that consideration of the wrongdoer's wealth is necessary under §1927; such a position would be outré if taken in a tort suit.)

If Banks cannot meet all of his financial obligations, he may have them written down in bankruptcy. What Banks

effectively wants us to do is to give him some debt relief in a quasi-bankruptcy proceeding, but without the forms of that process—forms that would include the opportunity for assets to be brought into the estate in a fraudulent-conveyance action. Instead of trying to administer debt relief one debt at a time, creating an odd (and extra-statutory) set of priorities, district judges should let the bankruptcy proceeding handle all debts and all creditors at one go, according to the Bankruptcy Code—which governs not only which claims are paid first but also how much a debtor with a given level of income must pay to creditors in the aggregate, and over how much time. All a district court could do by reducing the liability for sanctions under §1927 would be to interfere with the Bankruptcy Code.

Making the award depend on the injury, rather than the offender's wealth, has four additional benefits:

(a) It avoids the expense of suit-by-suit inquiries into ability to pay, which as this case shows may be complex. Whether a fraudulent conveyance has occurred can be hard to pin down. Why replicate a bankruptcy proceeding just to decide on an award of sanctions?

(b) It avoids false positives. Some people who claim to be indigent aren't. Indeed, the very assertion "I'm indigent, so please excuse me" implies solvency. Why seek to avoid an award that, if you are destitute, cannot harm you? (A person who fears that the award could be collected from future income may have it discharged in bankruptcy.)

(c) It avoids disparate treatment of identically situated litigants. District judges differ substantially in how they

use discretion. Rights measured by the chancellor's foot are not "rights" of any kind, and such a stochastic process is not the administration of justice. We need rules that apply in an even-handed fashion.

(d) It achieves deterrence. If Banks really is a bad lawyer (as he depicts himself), and is poor because people are not willing to pay much, or at all, for his services, then he should turn from the practice of law to some other endeavor where he will do less harm. No court would say, in a medical-malpractice action, that a doctor whose low standards and poor skills caused a severe injury should be excused because he does not have very many patients. No more is a bad lawyer excused because he has few clients.

AFFIRMED