# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 9, 2015        Decided February 5, 2016

No. 14-7140

CINCINNATI INSURANCE COMPANY,
APPELLANT/CROSS-APPELLEE

v.

ALL PLUMBING, INC. SERVICE, PARTS, INSTALLATION, ET AL.,
APPELLEES/CROSS-APPELLANTS

Consolidated with 14-7151

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cv-00851)

*Laura Anne Foggan* argued the cause for appellant/cross-appellee Cincinnati Insurance Company. With her on the briefs was *Thomas S. Garrett*.

*David M. Oppenheim* argued the cause for appellee/cross-appellant FDS Restaurant, Inc. With him on the briefs were *Jeffrey A. Berman* and *Stephen H. Ring*.

Before: ROGERS, TATEL and WILKINS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Cincinnati Insurance Company ("Cincinnati") filed a complaint for a declaratory judgment that it owes no duty to defend or indemnify claims brought against its insured, All Plumbing, Inc. and its president (together, "All Plumbing"), for sending unsolicited faxed advertisements alleged to be in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The district court ruled that Cincinnati could not assert any of its defenses to coverage under the primary liability provision of the policy because it had failed to reserve its rights but could assert such defenses under the excess liability provision. The district court did not address the asserted defenses under that provision, however. Cincinnati appeals, and FDS Restaurant, Inc., which is suing All Plumbing for violating the TCPA, cross-appeals.

The court dismisses the appeals for lack of a final decision as to all requested relief. *See* 28 U.S.C. § 1291. The decision granting summary judgment to FDS did not resolve all of Cincinnati's rights and liabilities under the excess liability provision of the policy, and that omission became more apparent when the district court clarified that some coverage defenses may be available under that provision. Absent a certification by the district court pursuant to Federal Rule of Civil Procedure 54(b) that the rights and liabilities under the primary liability provision of the policy are final and that there is "no just reason for delay," this court lacks jurisdiction. Because there is not a final decision as to any party, the court need not address whether the absence of entry of a judgment against All Plumbing, which defaulted, also defeats finality.

**I.**

Cincinnati issued a commercial insurance policy to All Plumbing that provides for primary liability coverage and, in the event that coverage is exhausted, excess liability coverage. The primary liability provision covers "bodily injury" and "property damage" subject to a $1,000 deductible under Part A, and "personal and advertising injury" under Part B. The excess liability provision follows the terms and conditions of the primary liability provision. The policy covers claims arising from March 3, 2006 to March 3, 2007.

Two class actions were filed against All Plumbing in the D.C. Superior Court for allegedly sending over 10,000 unsolicited faxes to businesses located in Washington, D.C. and Northern Virginia, in violation of the TCPA. The TCPA prohibits sending unsolicited advertisements by fax machine, except in limited circumstances, *see* 47 U.S.C. § 227(b)(1)(C), and recipients are entitled to $ 500 in statutory damages for each violation, an amount that may be trebled if the violation was willful or knowing, *see id.* § 227(b)(3). The first TCPA lawsuit was filed by Love the Beer, Inc., on September 14, 2010. By letter of December 2, 2011, Cincinnati notified All Plumbing that, subject to a full and complete reservation of rights, it would defend the lawsuit. The letter explained why the policy might not cover TCPA claims. The second lawsuit, virtually identical to the first, was filed by FDS on December 2, 2011. The same attorney represented the named plaintiffs in both class actions. On December 22, Love the Beer moved to dismiss its class claims. Cincinnati began defending the *FDS* action on All Plumbing's behalf, but did not notify All Plumbing of its reservation of rights. Instead, Cincinnati informed FDS that there may not be coverage for its claims against All Plumbing.

On May 21, 2012, Cincinnati filed a complaint in the federal district court for a declaratory judgment that it owes no duty to defend All Plumbing from the TCPA claims brought by FDS or to indemnify those claims should FDS prevail in the underlying lawsuit. FDS was named in the complaint. Cincinnati asserted, in part, that the excess liability provision does not cover the TCPA claims because they do not arise from an "occurrence" and also are not "personal and advertising injury." It also asserted that the claims come within policy exclusions, including the "expected or intended" exclusion, the "knowing violation of the rights of another" exclusion, and the "underlying insurance" exclusion. Finally, it asserted that the insured had substantially and materially breached the policy's notice provisions. *See* Compl. ¶¶ 32–39.

No party responded to the complaint, prompting the district court to enter a default against FDS and All Plumbing. Upon vacatur of the default at FDS's request, FDS filed a counterclaim for a declaratory judgment that its claims against All Plumbing are covered under both the primary and excess liability provisions of the policy. Cincinnati and FDS filed motions for summary judgment, with both contesting whether TCPA claims are "property damage" or "personal or advertising injury" under the policy. Alternatively, Cincinnati argued that All Plumbing's failure to provide it with notice of the *FDS* lawsuit bars coverage under the policy, and FDS argued that Cincinnati had waived any defenses to coverage.

The district court granted summary judgment to FDS on the ground that Cincinnati had not renewed its reservation of rights in the *FDS* action. *See Cincinnati Ins. Co. v. All Plumbing, Inc.* (*Cincinnati I*), 983 F. Supp. 2d 162, 165–69 (D.D.C. 2013). Cincinnati moved for reconsideration, in part arguing that its reservation of rights in the *Love the Beer* case should also apply to the *FDS* action. It also sought clarification that even if a

failure to reserve its rights precluded asserting coverage defenses under the primary liability provision, it should still be permitted to invoke that provision's deductible under Part A and assert any coverage defenses under the excess liability provision, because any duty to defend under that provision does not arise until the limits of the primary liability provision are exhausted. The district court denied reconsideration but clarified that Cincinnati is not precluded from asserting either the $1,000 deductible or any coverage defenses under the excess liability provision. *Cincinnati Ins. Co. v. All Plumbing, Inc.* (*Cincinnati II*), 64 F. Supp. 3d 69, 75–81 (D.D.C. 2014). The district court also denied Cincinnati's request for a status conference and clarification regarding the finality of the district court's decisions, ruling that its decisions granting summary judgment and clarification were final and appealable.

Cincinnati filed a notice of appeal, and FDS filed a cross-appeal. Thereafter, Cincinnati moved to dismiss the appeals for lack of appellate jurisdiction because the district court left unresolved some relief sought in its declaratory judgment complaint.

## II.

This court has jurisdiction over "final decisions" of the district court. 28 U.S.C. § 1291. A decision is final only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 (1988) (quoting *Caitlin v. United States*, 324 U.S. 229, 233 (1945)); *see also Blue v. D.C. Pub. Sch.*, 764 F.3d 11, 15 (D.C. Cir. 2014); *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 845–46 (D.C. Cir. 2012). This approach avoids piecemeal appellate review and also "protects the district court's independence, prevents multiple, costly, and harassing appeals, and advances efficient judicial

administration." *Blue*, 764 F.3d at 15; *accord Robinson-Reeder v. Am. Council on Educ.*, 571 F.3d 1333, 1336–37 (D.C. Cir. 2009). Federal Rule of Civil Procedure 54(b) provides, however, that where a case involves multiple claims or multiple parties,

> the [district] court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*See also Blue*, 764 F.3d at 15; *Robinson-Reeder*, 571 F.3d at 1337; *Turtle v. Inst. for Res. Mgmt.*, 475 F.2d 925, 925–26 (D.C. Cir. 1973). Because the district court did not invoke Rule 54(b), its decisions granting summary judgment and granting clarification are final only if they adjudicated all of the rights and liabilities at issue in the declaratory judgment action.

Throughout the declaratory judgment proceedings Cincinnati has argued that neither the primary nor excess liability provisions could be read to cover the TCPA claims in the *FDS* lawsuit. *See* Compl. ¶¶ 25–39; Cincinnati's Br. in Supp. Summ. J. 19–36. For example, Cincinnati argued that the TCPA claims are not covered because they do not arise from "personal and advertising injury" as that phrase is defined in the policy. The district court initially granted summary judgment to FDS, upon concluding it had no reason to address such arguments, because Cincinnati's failure to "properly reserve its rights . . . precludes Cincinnati Insurance from asserting any

defenses to coverage of the *FDS* action." *Cincinnati I*, 983 F. Supp. 2d at 169. It later clarified, however, that this decision applied only to the primary liability provision of the policy. *See Cincinnati II*, 64 F. Supp. 3d at 80–81. The district court's decisions preclude Cincinnati from claiming that the primary liability provision does not cover the TCPA claims in the *FDS* lawsuit. *See Cincinnati I*, 983 F. Supp. 2d at 165. But neither decision resolves fully Cincinnati's asserted defenses under the excess liability provision. The district court ruled that Cincinnati may assert coverage defenses under this provision, *see Cincinnati II*, 64 F. Supp. 3d at 80–81, without addressing the merits of the defenses that Cincinnati asserted in its complaint and thus without deciding whether Cincinnati can disclaim coverage of the TCPA claims under the excess liability provision. Failing to address those issues in Cincinnati's complaint renders the district court's decisions akin to grants of partial summary judgment, to FDS and to Cincinnati, that resolve only the threshold issue of the defenses Cincinnati waived by failing to reserve its rights, and such interlocutory decisions are not final under 28 U.S.C. § 1291. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 371 (D.C. Cir. 2006); *cf. Alaska v. Fed. Energy Regulatory Comm'n*, 980 F.2d 761, 763–64 (D.C. Cir. 1992).

FDS offers, assuming that there are unresolved issues relating to coverage under the excess liability provision, that this court has jurisdiction because it may never be necessary to resolve the undecided issues. FDS first suggests that any argument under the excess liability provision is irrelevant because Cincinnati also waived any policy limit that might provide a cap on its total liability under the primary liability provision. If coverage under the primary liability provision is unlimited, then there would be no need to tap into coverage under the excess liability provision or resolve the scope of that

coverage, effectively rendering the district court's decisions final. But reading the district court's decisions in this way, merely because Cincinnati never asked the district court to clarify that it had not waived policy limits under the primary liability provision, defies reason. In granting summary judgment, the district court neither stated nor implied that Cincinnati waived its policy limits. *See Cincinnati I*, 983 F. Supp. 2d at 167. Instead, the district court focused on whether Cincinnati was precluded from disclaiming coverage altogether, not on the total amount Cincinnati must pay if the TCPA claims are covered by the policy. Under FDS's reading, the district court would have rejected, *sub silentio*, the well-recognized distinction between asserting policy limits and asserting defenses to liability. *See* COUCH ON INSURANCE § 202:74 (3d ed. 2013); *Faber v. Roelofs*, 250 N.W.2d 817, 825 (Minn. 1977). FDS never argued in the district court that Cincinnati's failure to reserve its rights also precluded it from invoking its policy limits. Moreover, FDS's reading would render advisory the district court's decision clarifying its summary judgment decision and require this court to overlook authority cited by the district court recognizing that an insurer's failure to reserve its rights does not mean the policy is without limit on the coverage it provides. *See Cincinnati II*, 64 F. Supp. 3d at 79–81. Had the district court understood its decision granting summary judgment to preclude Cincinnati from relying on its policy limits, there would have been no need for it to clarify whether defenses are available under the excess liability provision.

Second, FDS suggests, no more persuasively, that this court has jurisdiction because the district court has finally resolved the only question necessary for the underlying TCPA litigation to proceed, namely, whether Cincinnati must defend the lawsuit. The question of how much Cincinnati will ultimately have to pay remains conceptually distinct. *See Salus Corp. v. Cont'l*

*Cas. Co.*, 478 A.2d 1067, 1069–70 (D.C. 1984). Further, FDS suggests that deciding more, including whether the TCPA claims are covered under the excess liability provision, would not only have been unnecessary but premature. If the parties settle their Superior Court class action litigation for less than the primary liability provision policy limits, then deciding issues relating to the excess liability provision would become unnecessary. Even without such a settlement, resolving some of the issues posed by Cincinnati's request for declaratory judgment might prove easier after the class action litigation is completed, particularly as "the duty to indemnify, *i.e.*, ultimate liability, depends upon the true facts" and not the allegations in FDS's complaint, *see Salus*, 478 A.2d at 1069–70. The district court did not indicate that these were the reasons it declined to address fully the relief sought by Cincinnati regarding the excess liability provision. So long as "other relief remains to be resolved," a district court decision is not final under 28 U.S.C. § 1291. *See Liberty Mut.*, 424 U.S. at 744.

Moreover, had the parties considered the district court's determinations about the primary liability provision to be final and wanted review by this court, they might have asked the district court to invoke Rule 54(b), *see Blue*, 764 F.3d at 19; *Robinson-Reeder*, 571 F.3d at 1340, and justified that request by explaining their concerns about prematurely reviewing the remaining issues related to the excess liability. Based on these same concerns, they might have asked the district court to delay resolving the excess liability issues until FDS's TCPA litigation is completed. In response, the district court might have exercised its discretion to "stay a declaratory judgment action during the pendency of [a] parallel state court proceeding[]," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 279, 288–90 (1995), which would be immediately appealable, *see id.* at 280–81 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 10 (1983)). Because they made no such requests of

the district court, and the district court has not finally resolved Cincinnati's rights and liabilities under the excess liability provision, this court lacks jurisdiction to consider either Cincinnati's appeal or FDS's cross-appeal.

The court, thus, has no occasion to address whether it lacks jurisdiction because the district court may have left unresolved questions of whether the primary liability provision's deductible applies on a per claim, per claimant or per occurrence basis. Nor need the court resolve whether the absence of the entry of judgment in favor of All Plumbing separately defeats finality. Although All Plumbing's interests are aligned with FDS for the purposes of Cincinnati's declaratory judgment action such that the need for a consistent judgment across defendants would require All Plumbing to share in FDS's victory in the initial summary judgment decision, *see Carter v. District of Columbia*, 795 F.2d 116, 137–38 (D.C. Cir. 1986), there is no final judgment with respect to any party, including FDS.

Accordingly, in view of Cincinnati's unresolved rights and liabilities under the excess liability provision, there is no final decision under 28 U.S.C. § 1291, and the appeal and cross-appeal are dismissed for lack of jurisdiction.