# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 13, 2020        Decided May 18, 2021

No. 19-7157

SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 32BJ,
APPELLEE

v.

PREEMINENT PROTECTIVE SERVICES INC.,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01679)

*Eden Brown Gaines* argued the cause and filed the briefs for appellant.

*Michael T. Anderson* argued the cause for appellee. With him on the brief was *Arlus J. Stephens*.

Before: KATSAS and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: This appeal arises from an employment dispute between Preeminent Protective Services, Inc. and the Service Employees International Union Local

32BJ (SEIU). The district court compelled the parties to arbitrate, held Preeminent in contempt for failing to comply, and awarded attorneys' fees to the SEIU. Preeminent seeks to challenge all three orders, but we lack jurisdiction to review the arbitration and contempt orders, which were final decisions not timely appealed. We affirm the fee award on the merits.

I

Preeminent provides security services in and around the District of Columbia. When Preeminent took over a contract at one site in the District, it refused to hire two guards who had previously worked there. According to the SEIU, the refusal violated a collective-bargaining agreement. The SEIU filed a petition to compel arbitration of that claim. In May 2018, the district court granted summary judgment to the SEIU and ordered the parties to arbitrate.

Preeminent stalled the arbitration for over a year. Two arbitrators recused themselves—one after Preeminent refused to commit to paying its share of the arbitration fees and another after Preeminent accused him of bias for seeking assurance of payment. As delays mounted, the SEIU moved for contempt. In November 2018, the district court ordered Preeminent to pay half the cost of the arbitration but determined that a contempt order would be premature. In January 2019, the court found that Preeminent had acted in bad faith and awarded attorneys' fees to the SEIU. In June 2019, the court found Preeminent in civil contempt and imposed a $20,000 fine if Preeminent failed to arbitrate within 30 days. The court also awarded further costs and attorneys' fees. After the contempt order, a third arbitrator finally completed the arbitration.

In November 2019, the court entered an order fixing the total amount of costs and attorneys' fees at about $51,000. Several days later, Preeminent filed a notice of appeal.

II

Preeminent seeks review of three orders: the May 2018 order compelling arbitration, the June 2019 contempt order, and the November 2019 order fixing the amount of attorneys' fees. Preeminent appealed neither the arbitration order nor the contempt order within 30 days of their entry. Yet Congress has provided that "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a). This 30-day deadline is jurisdictional. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 20–21 (2017); *Bowles v. Russell*, 551 U.S. 205, 209–10 (2007). And it is fatal to the attempted appeal of the arbitration and contempt orders.

A

First, we consider our jurisdiction to review the order compelling arbitration. Section 16 of the Federal Arbitration Act (FAA) specifies what kind of arbitration-related decisions are appealable. It bars appeals from any "interlocutory order … directing arbitration to proceed," 9 U.S.C. § 16(b)(2), but permits appeals from any "final decision with respect to an arbitration," *id.* § 16(a)(3). The SEIU contends that the May 2018 order was such a "final decision," which Preeminent did not timely appeal. Preeminent objects that the order was interlocutory and thus merged into the final award of attorneys' fees. *See Ciralsky v. CIA*, 355 F.3d 661, 668 (D.C. Cir. 2004).

A decision is "final" under the FAA if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (cleaned up). If the district court "has ordered the parties to proceed to arbitration, and dismissed all the claims before it," its decision is thus final. *Id.* at 89.

Here, the order compelling arbitration was final because it ended the litigation on the merits. The only claim before the district court was one to compel arbitration, and the court conclusively resolved it on summary judgment. *See Cincinnati Ins. Co. v. All Plumbing, Inc.*, 812 F.3d 153, 157 (D.C. Cir. 2016) (decisions granting summary judgment on all claims are final). To be sure, the court did re-engage in the case during the later contempt proceedings. But they arose only because Preeminent flouted the final order compelling arbitration, which did not open a new window for appealing it. *See United States v. Gewin*, 759 F.3d 72, 81 (D.C. Cir. 2014) ("a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy") (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). Because Preeminent did not timely appeal the order compelling arbitration, it cannot challenge that order here.

B

Next, we consider our jurisdiction to review the civil contempt order. Again, the question turns on whether Preeminent could have appealed the order when it was entered.

We have held that "a civil contempt order against a party in a pending proceeding is not appealable as a final order under 28 U.S.C. § 1291." *Byrd v. Reno*, 180 F.3d 298, 302 (D.C. Cir.

1999). But "in all situations other than that of civil contempt against a party to a pending proceeding," contempt sanctions "are deemed appealable as final decisions." 15B C. Wright & A. Miller, *Federal Practice & Procedure* § 3917 (2d ed. 1992). Thus, contempt orders entered after final judgment are themselves final and appealable. *See*, *e.g.*, *Gewin*, 759 F.3d at 77; *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993). The contempt order here falls within this category.

Preeminent argues that the contempt order was interlocutory because its sanction was conditional and the fee issues remained pending. But we have previously held that a contempt order imposing conditional sanctions is final. *Armstrong*, 1 F.3d at 1289; *see Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 436 (D.C. Cir. 2010). As for the pending fee dispute, the Supreme Court has imposed a "bright-line rule … that a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988). Under the same reasoning, a post-judgment contempt sanction does not lose its status as a final judgment because related fee litigation remains pending.

Preeminent contends that *Budinich*, which involved an award under a fee-shifting statute, does not govern sanctions imposed for litigation misconduct. But the same rule applies regardless of the source of the fee award. *See Budinich*, 486 U.S. at 201 ("the § 1291 effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those fees by the statute or decisional law that authorizes them"); *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs*, 571 U.S. 177, 185 (2014) ("*Budinich* made it clear that the uniform rule

there announced did not depend on whether the statutory or decisional law authorizing a particular fee claim treated the fees as part of the merits."). The pendency of fee issues did not prevent the contempt order from becoming final and appealable when it was entered. And because Preeminent did not timely appeal that order, it cannot challenge the order here.

## III

Preeminent did timely appeal the November 2019 fee award, which we must review on the merits. The district court based the fee award on the familiar "lodestar" figure—the number of hours worked by each SEIU lawyer multiplied by a reasonable hourly rate for each lawyer. *See*, *e.g.*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562–66 (1986). In determining the number of hours worked, the district court considered only time spent responding to Preeminent's "sanctioned conduct" of delaying the arbitration. *SEIU v. Preeminent Protective Servs., Inc.*, 415 F. Supp. 3d 29, 34–35 (D.D.C. 2019). And when calculating reasonable hourly rates, the court considered "prevailing market rates" for the legal services provided, rather than the actual rates charged by the lawyers involved. *Id.* at 35–37.

Preeminent raises three challenges to the fee award: First, it was impermissibly punitive to use prevailing market rates as opposed to actual rates. Second, the district court miscalculated the prevailing market rates. Third, the court should have lowered the award to account for Preeminent's inability to pay. We reject each contention.

## A

The district court's decision to use prevailing market rates to calculate the fee award rested on our decision in *Save Our*

*Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc). That case presented the question how to calculate an appropriate award under the fee-shifting provision of the Surface Mining Control and Reclamation Act. *See id.* at 1517. The attorneys in question charged below-market rates to support what they viewed as "good causes." *Id.* at 1518. We held that the award should reflect "prevailing market rates" for the services provided, "rather than the actual rates" charged by the attorneys. *Id.* at 1521. We have repeatedly applied *Cumberland Mountains* to uphold the use of market rates in determining appropriate awards under statutory fee-shifting provisions. *See*, *e.g.*, *Bd. of Trs. of the Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801–08 (D.C. Cir. 1998) (ERISA); *Covington v. District of Columbia*, 57 F.3d 1101, 1106–12 (D.C. Cir. 1995) (42 U.S.C. § 1988).

Preeminent seeks to distinguish awards under fee-shifting statutes from ones resting on a district court's inherent power to sanction for litigation-related misconduct. Preeminent cites *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), which held that fee awards imposed for misconduct "must be compensatory rather than punitive in nature." *Id.* at 1186. Preeminent reasons that if awards reflect rates above those actually charged, they go beyond merely providing compensation. Preeminent reads *Goodyear* to deem such awards to be punitive, thus requiring the procedural protections afforded for adjudications of criminal contempt. *See id.* (if "criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim").

*Goodyear* does not reach that far. The case presented no question whether use of a prevailing market rate above the discounted actual rate is better characterized as compensatory or punitive. Instead, the Court considered whether a district court could use its inherent sanctioning power to shift fees for

litigation tasks not caused by party misconduct at all. *See* 137 S. Ct. at 1187. The Court answered no but nonetheless stressed that, even in the context of sanctions, "[a] district court has broad discretion to calculate fee awards." *Id.* at 1184. *Goodyear* thus provides no basis for concluding that the use of market rates to calculate fee awards—a common if not ubiquitous practice in civil litigation—requires full-blown criminal process.

Our holding is narrow. We do not foreclose the possible use of discounted actual rates to calculate fee awards in the context of sanctions for litigation misconduct. Perhaps actual rates make more sense in the absence of fee-shifting statutes designed "to attract competent counsel." *Cumberland Mountains*, 857 F.2d at 1521 (cleaned up). Or perhaps actual rates make more sense because inherent powers "should be exercised with especial 'restraint and discretion.'" *Goodyear*, 137 S. Ct. at 1186 n.5 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). We do not decide these questions. Instead, we hold only that they do not implicate the line between civil and criminal contempt, which is enough to reject the argument as framed by Preeminent.

B

Preeminent next argues that the district court erred in calculating the prevailing market rate, which is the rate charged by attorneys of similar skill and experience in the relevant legal community. *See Covington*, 57 F.3d at 1109. Fee matrices "provide a useful starting point" in determining the market rate. *Id.* One of them—the so-called "*Laffey* matrix"—consists of rates compiled by the U.S. Attorney's Office for the District of Columbia for use in Washington, D.C. *See id.* Other relevant evidence might include attorney affidavits, as well as "recent fees awarded by the courts … to attorneys with comparable

9

qualifications handling similar cases." *Id.* We review the determination of an appropriate hourly rate only for abuse of discretion. *See id.* at 1110.

The district court here used the rates set forth in the *Laffey* matrix, which substantially exceeded the rates charged by the SEIU's outside counsel. But as the court explained, counsel discounted their rates because the SEIU, a non-profit organization, could not afford market rates. Moreover, the court found "ample evidence that the Union's outside counsel are skilled attorneys who could command" market rates "but chose to discount their services" for the union. *SEIU*, 415 F. Supp. 3d at 36. This evidence included affidavits setting forth the attorneys' academic credentials, judicial clerkships, significant representations, other professional experience, and orders approving fee awards for them at the *Laffey* rates in similar cases. Preeminent's only contrary evidence was a single declaration by a former official in a different union. He attested that the usual market rate for union attorneys was between $200 and $350 an hour, but without specifying whether that was a discounted rate and without providing any corroborating evidence. On this record, the district court did not abuse its discretion in concluding that the SEIU's attorneys could command the market rates in the *Laffey* matrix.[1]

---

[1] The district court saw no distinctive concern with awarding market rates to the SEIU's in-house counsel. We have held that ethical rules may restrict the use of market rates for in-house counsel to unions and other organizations that engage in activities beyond simply providing legal services. *Am. Fed'n of Gov't Emps. v. FLRA*, 944 F.2d 922, 934–37 (D.C. Cir. 1991). We cannot fault the court for overlooking that point, though, for Preeminent raised it neither below nor here.

10

C

Finally, Preeminent argues that the district court erred in failing to reduce the fee award based on its asserted inability to pay. The circuits are divided on whether courts, in imposing compensatory litigation sanctions, must consider the sanctioned party's asserted inability to pay. *Compare Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002) (yes), *with Shales v. Gen. Chauffeurs, Local Union No. 330*, 557 F.3d 746, 749–50 (7th Cir. 2009) (no). We need not address this question, for we agree with the district court that Preeminent did not show an inability to pay the sanction imposed here.

In support of its request for a reduced sanction, Preeminent submitted evidence of operating and other losses and the termination of its largest contract. But as the district court noted, the losses give no sense of Preeminent's balance sheet or net worth, and the expired contract says nothing about other contracts that might take its place. *See Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955, 962 (D.C. Cir. 2003) ("business losses are not equivalent to claims of inability to pay"). Moreover, the SEIU presented its own evidence that Preeminent had active contracts with the federal government and the District of Columbia worth over $2.5 million, that it was also under contract to provide security for Ravens and Orioles games in Baltimore, and that Preeminent's website claimed over 200 clients served. Based on this evidence, the district court permissibly concluded that Preeminent failed to show an inability to pay the $51,000 award of fees and costs.

IV

We dismiss Preeminent's appeal of the arbitration and contempt orders, and we affirm the fee award on the merits.

*So ordered.*